Hillsborough,
No. 5072.

STATE *v.* HENRY R. LAVALLEE.

Argued November 7, 1962.

Submitted February 5, 1963.

Decided March 29, 1963.

444

*William Maynard*, Attorney General, *Frederic T. Greenhalge*, Assistant Attorney General, and *Conrad Danais*, county attorney (*Mr. Greenhalge* orally), for the State.

*James M. Winston* and *Peter J. Bourque* (*Mr. Winston* orally), as *amici curiae*, on behalf of the defendant.

*Henry R. Lavallee*, pro se.

DUNCAN, J.   The defendant, who was then thirty-six years of age, was arrested on January 13, 1961 at approximately 5:00 P. M., following a complaint that he had assaulted Mrs. Elizabeth Lemire in her fourth floor apartment on Central Street in Manchester.   There was evidence that they had been drinking together there.   Just prior to the defendant's arrest, Mrs. Lemire sought aid in a neighboring store, and was taken to the hospital by police ambulance.   She was suffering from fractures of three ribs on one side and two on the other, and from numerous cuts, bruises and lacerations of the scalp, face, and body.   She was forty-five years of age, weighed approximately 135 pounds, and for some time previously had suffered from heart disease for which she

had been hospitalized periodically. At 1:10 P. M. on Saturday, January 14, 1961, she expired.

At approximately 8:00 P. M. on January 13, 1961, the defendant was charged with aggravated assault, and on January 14, 1961, following Mrs. Lemire's death, the charge was changed to manslaughter. On Monday morning, January 16, 1961, he was taken before the municipal court of Manchester and bound over to the Hillsborough County Superior Court. He was indicted for manslaughter at the next April term of the Superior Court, and a second indictment for the same offense was returned at the following September term.

In October 1961 the defendant moved to quash the second indictment upon the ground that there was pending another indictment charging him with the same offense. On November 1, 1961 the prior indictment was nol-prossed and the motion to quash the second indictment was thereafter denied. The defendant's motion for an allowance of funds to obtain expert and other witnesses was granted. Original counsel having withdrawn, the Court appointed new counsel to represent the defendant. The trial commenced in the Superior Court on November 28, 1961, following the defendant's plea of not guilty, and continued through December 7, 1961 when a verdict of guilty of manslaughter in the first degree was returned.

Just prior to oral argument in this court the defendant discharged his court-appointed counsel. Since they had prepared and filed a brief on his behalf they were permitted to argue as *amici curiae*. Thereafter at the defendant's request decision was postponed to permit him to file his own brief after having had an opportunity to review the records and proceedings in this and the Superior Court. In addition thereto this court ordered copies of the briefs of the State and *amici curiae* and transcripts of all oral arguments in this court to be furnished to the defendant.

The first contention made on behalf of the defendant is that his motion to quash the indictment should have been granted. Apart from the issue of the sufficiency of the evidence which is hereinafter considered, the defendant's contention in support of his exception to the denial of his motion to quash the indictment is grounded upon the pendency of the earlier indictment. While the State might have been compelled to elect which indictment it would proceed upon at the trial (see *State* v. *Nelson*, 103 N. H. 478, 485), this issue was disposed of by the *nolle prosequi* entered

by the county attorney. It was clearly within the prerogative of the county attorney to take this action (*State* v. *Smith*, 49 N. H. 155, 157; *State v. Gratta*, 101 N. H. 87, 88) and the question presented by the motion to quash thereupon became moot. No defect in the indictment upon which the defendant was tried has come to our attention, and the exception to denial of the motion to quash is overruled.

A major contention relates to the receipt of evidence of certain oral statements made by the defendant following his arrest, and to receipt in evidence of a written statement covering substantially the same facts, which was given on January 14, 1961 just before the charge of manslaughter was lodged against him. In accordance with usual practice, the witnesses by whom this evidence was presented were first heard by the Trial Court without the presence of the jury. See *State* v. *George,* 93 N. H. 408. A finding that the defendant's statements were voluntarily made is implied in the ruling of the Trial Court permitting the jury to hear this evidence. A careful examination of the record discloses no error in its admission.

On behalf of the defendant it is argued, in particular, that the evidence was inadmissible under *Mapp* v. *Ohio,* 367 U. S. 643, because the statements were made and the written statement was signed while the defendant was being illegally detained. According to the evidence the defendant was placed under arrest shortly before 5:00 P. M. on January 13, 1961, and at 5:07 P. M. was booked at the Manchester police station for investigation. See RSA 594:2. The same day, prior to 8:45 P. M., he was questioned after being informed of his right to decline to answer and he then informed the police among other things that he had been living with Mrs. Lemire on Central Street since March 1960, and that following an argument on the afternoon of January 13, 1961 he had repeatedly punched her in the face and knocked her down; and that if she had said (as she had) that he had kicked her, "then he did." Between 8:45 and 9:00 P. M. on January 13, 1961 the defendant was charged with aggravated assault. On January 14, 1961, after the police learned in the afternoon of Mrs. Lemire's death earlier that day, the defendant was again questioned by officers that evening. After he was advised of Mrs. Lemire's death, he repeated his earlier account, and his statement, after typing, was signed by him at approximately 9:05 P. M. Although the defendant had been

told that he would be charged with manslaughter, it did not conclusively appear whether or not he was "booked" for manslaughter or formally charged therewith on January 14, 1961. On Monday morning, January 16, 1961 he was arraigned before a magistrate on a charge of manslaughter.

RSA 594:23 provides that "every person arrested shall be brought before a magistrate within twenty-four hours from the time of his arrest, Sundays and holidays excepted," unless a justice of the municipal court for good cause shown orders that he be held "for a further period of not exceeding forty-eight hours." See also, RSA 594:20. Since no order for extension of time was obtained, the defendant contends that his detention was illegal, and that evidence of statements made during his detention should therefore have been excluded.

The State maintains that the defendant's detention did not violate RSA ch. 594, in view of the sequence of events. However, the issue need not be determined. As was pointed out in *State* v. *Mihoy*, 98 N. H. 38, 42, "failure to comply with [RSA 594:23], without more, is not cause to reverse [a] conviction." As in that case, there is no reason in this one to conclude that the statements made by the defendant were the product of illegal detention, or were anything other than voluntary. Nor does *Mapp* v. *Ohio, supra,* relied on by *amici* require us to come to any different conclusion. In *Culombe* v. *Connecticut,* 367 U. S. 568, decided on the same day as the *Mapp* case, the court reversed a conviction upon the ground that certain confessions had been coerced from the defendant; but as appears from the opinion announcing the judgment of the court in the *Culombe* case, the rule of *McNabb* v. *United States,* 318 U. S. 332 has not been "extended . . . to state prosecutions as a requirement of the Fourteenth Amendment." *Id.,* 600, 601. See also, *People* v. *Lane,* 10 N. Y. 2d 347, 352; LaFave, Police Detention, 1962 Washington U. L. Q. 331, 332.

As we understand the rule applied by the United States Supreme Court with reference to proceedings in state courts: "The question in each case is whether a defendant's will was overborne at the time he confessed." *Reck* v. *Pate,* 367 U. S. 433, 440. "The ultimate test remains . . . the test of voluntariness." *Culombe* v. *Connecticut,* 367 U. S. 568, *supra,* 602. Only when it appears that statements of an accused are involuntary, because produced by coercion or other circumstances overbearing his will, does use

of his statement offend due process. *Rogers* v. *Richmond,* 365 U. S. 534; *State* v. *Traub* (Conn.), 187 A. 2d 230. We conclude that the rule in *Mapp* v. *Ohio,* 367 U. S. 643, *supra,* which bars the use in state courts of evidence obtained by illegal search and seizure does not preclude the use of statements by an accused which were voluntarily made during detention which could be found technically illegal. *Cf. Wong Sun* v. *United States,* 83 Sup. Ct. 407 (1963).

Other exceptions taken on the ground of inadmissibility of evidence relate to photographs of the corpse of the deceased; testimony as to statements of the deceased when she first sought aid following the assault, and later, on the way to the hospital; and evidence that the defendant was seen to slap the deceased in the face upon the street two days prior to the later assault which proved to be fatal. We find no error in the rulings admitting the evidence. The photographs served to illustrate a differentiation made by witnesses between injuries suffered in the fatal assault, and bruises of prior origin not attributable thereto. There was evidence that following the assault in question when the deceased made the statements attributed to her by witnesses, she was bleeding from the face, complaining of pain in her side, and in a state of nervous excitement; and that they were made within a reasonably short time after the events to which they related. Their receipt in evidence was well within the discretion of the Trial Court. *State* v. *Peters,* 90 N. H. 438, 440. The evidence of the previous assault by the defendant was offered to prove motive and prior relationship of the parties and was likewise admissible in the Court's discretion. *State* v. *Palmer,* 65 N. H. 216, 219; *State* v. *Peters, supra,* 440. See 3 Underhill, Criminal Evidence (5th *ed.*) *ss.* 645, 646.

Another argument presented in painstaking detail by *amici* is directed to the proposition that the medical testimony was insufficient to establish that death resulted from the assault. This contention is founded primarily upon the fact that the medical expert who conducted the autopsy testified that "The multiple injuries in themselves [were] not adequate to have resulted in death." He indicated however that by this he meant merely that such injuries of themselves would not have caused death "in a healthy individual." Explaining his opinion in the same answer, he further stated, "However the deceased was suffering from advanced arteriosclerotic cardiovascular disease and congestive

cardiovascular failure. The physical exertion concomitant to efforts of self-protection with the added shock produced by the physical injuries, particularly to the scalp, face and chest, acutely precipitated the mechanism of events which resulted in the untimely death of the deceased."

It is urged that this opinion was without foundation because of the absence of evidence that the deceased endeavored to protect herself from the assault, or that she suffered from shock due to her injuries, as distinguished from symptoms of heart failure. However the witness explained that the instinct of self-protection of any living organism was what he relied upon, and stated that the factor "isn't that important" to his conclusion. We find no error in permitting the expert to testify from his "general medical knowledge" that shock would result to a person in the deceased's physical condition from the fractures and other injuries which she admittedly suffered. In our judgment the issue argued before us by counsel went to the weight rather than the admissibility of the evidence, and the medical testimony was adequate to support a finding by the jury beyond a reasonable doubt that death occurred when it did because of the injuries inflicted.

The contentions made in the brief filed by the defendant personally that this evidence should not have been received because the medical expert was "not qualified as a State pathologist," and that the indictment must be "nol prossed" or dismissed for "lack of substantial evidence" cannot be adopted. The law is clearly established that the testimony of the expert was admissible. *State* v. *Nelson*, 103 N. H. 478, 485, *supra*. The exceptions to the denial of his motions to dismiss for lack of sufficient evidence are overruled.

Toward the close of the trial, the defendant offered in evidence a lengthy record of convictions of the decedent for drunkenness, upon pleas of guilty or nolo, over a period commencing in 1937 and ending in June 1960. The record was offered "to show the type of care that she took in allowing for her heart condition" and to "attack [her] credibility." The defendant's counsel declined to offer the record upon the issue of credibility alone, and excepted to the Court's ruling "excluding it on general medical grounds" when the State objected that there was "no evidence connecting it with death." We think the ruling was proper, and the exception is overruled.

At the close of the trial, the defendant moved that the issue of

aggravated assault be withdrawn from the jury upon the ground that there was no evidence, either that the means employed in the assault were highly dangerous, or that the accused had a motive beyond the intent to injure the decedent. *State v. Skillings,* 98 N. H. 203, 210. The motion was denied subject to exception. Following the charge to the jury, the defendant also excepted to instructions that an assault is an aggravated assault "where the means used are highly dangerous or if it is perpetrated with extraordinary violence which is likely to cause serious bodily harm," the exception being to the concluding clause relating to "extraordinary violence." In view of the evidence that the deceased had stated that the defendant "stomped" her with his feet, in addition to punching her and knocking her down, there was no error in denial of the motion, or in the instructions given. *State v. Skillings, supra.* See *Medlin v. United States,* 207 F. 2d 33 (D.C. Cir. 1953).

The defendant did not testify at the trial. Contentions advanced in the brief submitted by him personally which have not already been considered are concerned with matters not contained in the record, and hence not supported by evidence. We find no basis for his broad assertion that he has been deprived of his "constitutional rights to a fair trial by due process of law." Prior to trial he was provided with counsel satisfactory to him at the time, and with the means to obtain witnesses. He was afforded full opportunity to present his defense during a lengthy trial, which we conclude after examination of the entire record was free from legal error.

The order in the case is

*Exceptions overruled.*

All concurred.