725 A.2d 151

COMMONWEALTH of Pennsylvania, Appellant,

·v.

Anthony PERSIANO, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 22, 1998.

Decided Jan. 20, 1999.

Catherine Marshall, Hugh J. Burns, Philadelphia, for Commonwealth.

Burton Rose, Philadelphia, for Anthony Persiano.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

SAYLOR, Justice.

This is a Commonwealth appeal from an order of the Superior Court which granted a new trial to Appellee, Anthony Persiano ("Persiano"), on the basis that Persiano's confession to first degree murder was obtained in violation of this Court's six-hour exclusionary rule related to prompt arraign-

ment.  As we find this case controlled by the Court's recent decision in *Commonwealth v. Washington,* 547 Pa. 550, 692 A.2d 1018 (1997), we reverse.

On August 24, 1991, Anthony Cavalieri was shot to death in South Philadelphia, and the police suspected that Persiano was the killer.  However, Persiano was not arrested or questioned about the murder, and the police continued to investigate. Nineteen months later, on January 15, 1993, at 11:17 a.m., Persiano was arrested on an unrelated weapons charge and transported to the major crimes unit of the Philadelphia police department for processing.  After receiving *Miranda* warnings, Persiano declined to make a statement on the charge. That afternoon, at approximately 3:00 p.m., Detective William Schol, the lead detective in the murder investigation, was notified of Persiano's arrest.  Although Detective Schol was in court on another matter at the time, he instructed that Persiano should be processed normally, like any other arrestee.  Later that same day, at 6:00 p.m., Persiano was taken to the police administration building to be fingerprinted, photographed and arraigned.

At 2:30 a.m. the next day, January 16, 1993, while Persiano was still in custody but not yet arraigned on the weapons charge, Detective Schol accompanied him from the detention area in the police administration building upstairs to the homicide unit for interrogation regarding the murder.  At 4:55 a.m., after being told of the evidence implicating him in the murder, Persiano again received *Miranda* warnings, and then confessed to the murder, concluding his statement to Detective Schol at 5:40 a.m.  Thus, Persiano confessed to the murder approximately eighteen hours after he was taken into custody and before he was arraigned on the weapons charge, but only three hours after the initiation of custodial interrogation related to the Cavalieri killing.

Prior to trial, Persiano moved to suppress his confession, alleging that it was obtained outside the period established for prompt arraignment under the six-hour rule enunciated in *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977), and modified in *Commonwealth v. Duncan,* 514 Pa.

395, 525 A.2d 1177 (1987) (plurality opinion) (the "*Davenport–Duncan* rule"). The trial court denied the motion. Thereafter, Persiano was found guilty by a jury of first degree murder and was sentenced to a term of life imprisonment.

On appeal, the Superior Court reversed, concluding that Persiano's confession should have been suppressed under the *Davenport–Duncan* rule. The Superior Court reasoned that the trial court misinterpreted the rule by calculating the six-hour time period from when the interrogation regarding the murder began, rather than focusing on the time when Persiano was originally taken into custody on the unrelated weapons charge. The Superior Court held that, when an accused is in custody on unrelated charges and is not arraigned on those charges, any confession to a second crime given more than six hours after commencement of the initial confinement violates the six-hour rule and must be suppressed. Accordingly, Persiano was granted a new trial.

On April 18, 1997, this Court issued its decision in *Washington*. The Commonwealth petitioned for allowance of appeal on the basis that the Superior Court's decision conflicted with *Washington*.

In *Washington*, the defendant, Vinson Washington ("Washington"), was convicted of first degree murder and sentenced to death for the killings of two men. Washington initially was arrested on a charge unrelated to these murders. While being processed on that charge, he was placed in a holding cell. Approximately twenty-eight hours after his initial arrest, he was taken to an interrogation room, questioned concerning the murders, and, within five hours from the start of questioning, gave an inculpatory statement, which ultimately was used against him at trial.

Washington argued on appeal that his trial counsel was ineffective for failing to seek suppression of such confession on the basis that it was obtained in violation of the *Davenport–Duncan* rule. In addressing this claim, the Court reviewed the development of the six-hour rule from its initial formulation in *Davenport*, which directed the focus of the rule to the

timing of the arraignment, through its modification in *Duncan*, in which the relevant inquiry shifted to consideration of "*when* the [defendant's] statement was obtained, i.e., within or beyond the six hour period." *See Washington*, 547 Pa. at 560, 692 A.2d at 1022 (quoting *Duncan*, 514 Pa. at 406, 525 A.2d at 1182). The Court also acknowledged the initial policy of *Davenport*, namely, "to guard against the coercive influence of custodial interrogation [and] to ensure that the rights to which an accused is entitled at preliminary arraignment are afforded without unnecessary delay." *Washington*, 547 Pa. at 560, 692 A.2d at 1022 (quoting *Davenport*, 471 Pa. at 284, 370 A.2d at 305). With these considerations in mind, and acknowledging that Washington had been subject to a prolonged period of detention prior to the homicide interrogation, the Court nevertheless declined to find a violation of the *Davenport–Duncan* rule, where the period of such pre-arraignment interrogation did not exceed six hours. *Id.* at 560–61, 692 A.2d at 1022–23.[1]

■ Here, as in *Washington*, following his arrest on the weapons charge, Persiano was detained in police custody for a substantial period of time prior to being questioned regarding the Cavalieri homicide, but confessed to the murder within three hours from the time such interrogation commenced. Thus, pursuant to *Washington*, the confession occurred within the pertinent six-hour period.

Persiano argues that the purpose of the *Davenport–Duncan* rule includes the protection against prolonged custodial detention prior to police interrogation, and that, after six hours of such detention, no confession for any crime can be deemed voluntary. As the Commonwealth points out, however, this Court rejected an almost identical argument in *Washington*, stating as follows:

> In the instant case, Appellant argues that since he had been in custody for approximately 28 hours prior to the start of questioning on the Jackson killing that his confession to that

1. This substantive disposition was also applied in the companion case of *Commonwealth v. Washington*, 547 Pa. 563, 570–71, 692 A.2d 1024, 1027–28 (1997), which involved the same defendant, but a different victim.

crime was obtained through "the intrinsically coercive effects of unbroken custody and multiple police interrogatories." To accept this argument would be to ignore the clear import of the facts of this case. Appellant was arrested at 4:30 a.m. December 31, 1993 on an unrelated charge. While being processed on that charge, he was placed in a holding cell. Then, at 8:45 a.m. on January 1, 1994, he was taken to an interrogation room in the Police Administration Building, where he gave an inculpatory statement within approximately five hours from the start of questioning. On these facts, we decline to find a violation of the *Davenport–Duncan* rule, *which is premised on a desire to avoid the coercive effect of prolonged police interrogation.*

*Washington,* 547 Pa. at 560–61, 692 A.2d at 1022–23 (footnotes and citations omitted; emphasis added). It is thus apparent that the application of the *Davenport–Duncan* rule is offense specific, and the rule does not operate to bar admission of Persiano's confession.

Application of the *Davenport–Duncan* rule in such fashion does not, however, preclude a defendant from pleading and proving that his statement was not voluntary. Here, the suppression court found that Persiano was not threatened, that he was alert and responsive, and that his statement was not procured by any physical or psychological coercion. Consequently, the suppression court determined that Persiano's statement was freely and voluntarily given.

Accordingly, the order of the Superior Court is reversed, and the case is remanded to the Superior Court for disposition of the remaining issues raised by Persiano in his direct appeal. Jurisdiction is relinquished.