845 A.2d 779

COMMONWEALTH of Pennsylvania, Appellee,

v.

**John PEREZ, Appellant.**

Supreme Court of Pennsylvania.

Argued April 9, 2002.

Decided March 24, 2004.

John Packel, Karl Baker, Jeffrey Paul Shender, Philadelphia, for John Perez.

Hugh J. Burns, Michael Erlich, Philadelphia, for Com.

Before: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## *OPINION*

Justice EAKIN.

We are asked to determine whether the Superior Court erred in affirming appellant's judgment of sentence for robbery and related offenses, when the evidence included an inculpatory statement appellant made more than six hours after his arrest, before he was arraigned. The Superior Court's application of the "six-hour rule" established by *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), and *Commonwealth v. Duncan*, 514 Pa. 395, 525 A.2d 1177 (1987) (Opinion Announcing the Judgment of the Court),[1] causes us to re-examine this bright-line rule, which calls for suppression

---

1. Although *Duncan* was not a majority opinion, Pennsylvania courts have relied upon it, in conjunction with *Davenport,* as a seminal decision regarding the "six-hour rule."

of a pre-arraignment confession simply because it was obtained more than six hours after arrest.

At 4:30 p.m., on November 24, 1996, three men robbed a deli at gunpoint. Based on the victims' account and a videotape from a security camera, police had a description of the suspects and their car. At 6:15 p.m., a pizzeria was robbed by three men of the same description, with the same car. At 6:30 p.m., police stopped a car matching the description, and finding its occupants matched the description of the suspects, arrested them for both robberies. Appellant, a juvenile at the time, was one of the occupants; seeking to avoid discovery by the police of outstanding warrants for his arrest, he gave police what they later found to be a false name, birth date, address, and phone number.

At approximately 11:15 p.m., after concluding his preliminary investigation of the crime scenes, Detective George Fetters began to interview appellant. When Detective Fetters ran a computer check at 11:42 p.m., using the name appellant had given, he discovered appellant had lied. Police ascertained appellant's true identity around midnight; at 12:15 a.m., they telephoned his aunt, with whom he lived, and asked her to be present while they talked to appellant. She declined, but gave the detectives permission to speak with appellant about the robberies. At 12:45 a.m., appellant was given *Miranda*[2] warnings and agreed to make a statement; he confessed to being involved in both robberies. Questioning concluded at 4:35 a.m. Appellant was arraigned at 9:24 a.m., nearly 15 hours after his arrest.

Appellant moved to suppress his statement because it was not obtained within six hours of his arrest, in violation of *Davenport* and *Duncan*. The trial court denied the motion. Appellant was tried as an adult, a jury found him guilty, and he was sentenced to 8 to 20 years imprisonment. He appealed to the Superior Court, again alleging his confession should have been suppressed.

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The Superior Court affirmed, concluding that although the interrogation did not begin until nearly six hours following arrest, suppression was not required because appellant caused the delay by giving the police false information. *Commonwealth v. Perez*, 760 A.2d 873, 876 (Pa.Super.2000), *appeal granted*, 567 Pa. 759, 790 A.2d 1015 (2001). The majority was reluctant to allow appellant to benefit from a delay he intentionally caused, and cited the reasoning in *Commonwealth v. Devan*, 338 Pa.Super. 95, 487 A.2d 869 (1985) (plurality), where the two-hour delay resulting from the accused's use of a false name was excluded from calculation of the six-hour period. The *Devan* court analogized cases where the defendants deliberately made themselves unavailable for trial, yet claimed violations of former Pa.R.Crim.P. 1100.[3]

Accordingly, the Superior Court held the six-hour period did not begin to run until appellant gave the police his correct name, rather than at the time of his arrest, when he used a false name. The court also noted that the interrogation was not prolonged, and appellant did not allege his statement was coerced or involuntary. The majority concluded:

> In view of the cause of the delay and the circumstances surrounding it in this case, suppression of the statements made to police by Perez would not comport with the spirit behind the rule or with this Court's previous rulings that a defendant should not profit from a delay which he himself has caused.

*Perez*, at 879.

Judge Johnson dissented, for three reasons. First, he concluded the majority erred in relying on *Devan*, which was not a majority opinion, and thus of no precedential value. He further concluded the cases cited in *Devan* were not analogous to this case because appellant's false information did not make him physically unavailable for arraignment, nor did appellant waive his right to prompt arraignment.

Second, the dissent maintained, a defendant can be arraigned regardless of whether the police know his correct identity;

3. Renumbered Pa.R.Crim.P. 600, effective April 1, 2001.

indeed, a defendant who exercises his right to remain totally silent can still be promptly arraigned. Therefore, it was the police's decision to perform further investigation which caused the delay, not appellant's dishonesty.

Finally, Judge Johnson observed the majority's holding conflicted with *Davenport* and *Duncan*. Although some members of this Court have expressed dissatisfaction with the rule, *see Commonwealth v. Bridges,* 563 Pa. 1, 757 A.2d 859, 883 (2000) (Saylor, J., concurring; joined by Cappy, J.), *cert. denied,* 535 U.S. 1102, 122 S.Ct. 2306, 152 L.Ed.2d 1061 (2002), the dissent concluded it was beyond the Superior Court's authority to discard the rule as long as it remains binding precedent. Judge Johnson also concluded appellant's failure to allege his confession was coerced or involuntary was of no import, as the six-hour rule contemplated that the " 'mere passage of time' while under arrest could have a coercive effect on a defendant." *Perez,* at 882 (Johnson, J., dissenting) (quoting *Duncan,* at 1182). Finding appellant had only to show his statement was made beyond the six-hour period, the dissent would have suppressed it.

In this appeal, appellant likewise argues the true cause of the delay was not his false information, but the police's decision to continue the initial investigation prior to interrogation; he argues they had sufficient information from the surveillance video, and there was no reason for the delay in questioning him. He further contends there is no need to incorporate an "excludable time" analysis into the six-hour rule, when the rule already allows for the exception of exigent circumstances.

The Commonwealth counters that police began interrogating appellant within the six-hour period, but were delayed for over an hour by appellant's false information, which made additional investigation and processing necessary. The Commonwealth further argues the six-hour rule should be reconsidered, citing the acknowledged shortcomings of a bright-line rule of exclusion, as well as case law from other jurisdictions

which have abandoned a *per se* approach to exclusion in favor of a "totality of the circumstances" test.

In Pennsylvania, the right to prompt arraignment is set forth in the Rules of Criminal Procedure,[4] which state that a person who has been arrested "*shall* be afforded a preliminary arraignment by the proper issuing authority *without unnecessary delay.*"   Pa.R.Crim.P. 516(A) (execution of arrest warrant within judicial district of issuance) (emphasis added); *see also* Pa.R.Crim.P. 517(A) (execution of arrest warrant outside judicial district of issuance); Pa.R.Crim.P. 518(A) (using advanced communication technology when arrest warrant executed outside judicial district of issuance); Pa.R.Crim.P. 519(A) (arrest without warrant).   This requirement is not constitutionally mandated, but it ensures a defendant is afforded the constitutional rights protected by Pa.R.Crim.P. 540, which requires the issuing authority to:  read the complaint to a defendant to inform him of the nature of the charges against him, Pa. Const. art.  I, § 9; inform him of his right to counsel, U.S. Const.  Amends.  VI, XIV, Pa. Const. art.  I, § 9; and inform him of his right to reasonable bail.  Pa. Const. art.  I, § 14.  *See* Pa.R.Crim.P. 540(E)(1)-(3), (G).  Prompt arraignment also protects a defendant's right to be free from unreasonable seizure of his person.  U.S. Const.  Amends.  IV, XIV, Pa. Const. art. I, § 8.

Before *Davenport,* to enforce the prompt arraignment requirement, this Court held all evidence obtained during unnecessary delay between arrest and arraignment was inadmissible, unless the evidence bore no relationship to the delay. *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417, 419 (1972)

---

4.  *Cf. McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); *Mallory v. United States,* 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).  These cases dealt with the right to prompt arraignment provided by Rule 5(a) of the Federal Rules of Criminal Procedure, and created what became known as the *"McNabb–Mallory* rule," providing for automatic exclusion of otherwise voluntary statements obtained during a period of "unnecessary delay."  However, the *McNabb–Mallory* exclusionary rule stemmed from the Supreme Court's power to supervise the federal courts, and was not constitutionally required to be imposed on the states.  *Gallegos v. Nebraska,* 342 U.S. 55, 63–64, 72 S.Ct. 141, 96 L.Ed. 86 (1951).

(identification obtained during uncounselled line-up after unnecessary 13–hour delay was inadmissible, but harmless error, in light of other independent identification evidence). This holding was refined in *Commonwealth v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974), where this Court developed a three-part test for determining whether evidence obtained during pre-arraignment delay would be suppressed: (1) the delay must be unnecessary; (2) the evidence must be prejudicial; and (3) the evidence must be reasonably related to the delay. *Id.*, at 420.

Given the flood of cases that followed, this Court in *Davenport* sought to "simplify the task of determining the admissibility of statements taken before arraignment and thereby further judicial economy." *Id.*, at 306. The Court adopted a rule that made the admissibility of statements obtained between arrest and arraignment dependent on the length of time between these events: "[i]f the accused is not arraigned within six hours of arrest, any statement obtained after arrest but before arraignment shall not be admissible at trial." *Id.* Six hours was chosen because there was no case where a delay of six or more hours was held to be "necessary" delay, and the National Advisory Commission on Criminal Justice had recommended that time frame. *See id.*, at 306 n. 7 (collecting cases and citing Standards and Goals of the National Advisory Committee on Criminal Justice, Corrections § 4.5 (1973)).

In *Duncan*, the rule was modified, in response to a decade of mechanical enforcement of the six-hour period. The Court reiterated the twin aims of the rule, "to guard against the coercive influence of custodial interrogation, [and] to ensure that the rights to which an accused is entitled at preliminary arraignment are afforded without unnecessary delay." *Id.*, at 1181 (quoting *Davenport*, at 305). The Court stressed that there was never an intent to have the rule rigidly applied without regard to its purpose of discouraging coercive interrogation, and emphasized the rule did not abandon *Futch* and *Williams'* requirement that the evidence sought to be suppressed be reasonably related to the delay. *Duncan*, at 1182. Therefore, in determining whether to suppress an incrimina-

ting statement, "the focus should be upon *when* the statement was obtained, i.e., within or beyond the six-hour period." *Id.* Accordingly, the rule was modified to allow the admission of statements made within six hours of arrest, regardless of when arraignment occurred, as such statements were not the product of delay.

In *Commonwealth v. Bond,* 539 Pa. 299, 652 A.2d 308 (1995), this Court reaffirmed the six-hour rule, holding it to be offense-specific; that is, "the arrest of a suspect for one criminal offense does not commence the six-hour period for questioning regarding a separate criminal offense." *Bridges,* at 870 (citations omitted); *see also Commonwealth v. Persiano,* 555 Pa. 428, 725 A.2d 151 (1999). In *Commonwealth v. Washington,* 547 Pa. 550, 692 A.2d 1018 (1997), this Court held there was no violation of *Davenport* or *Duncan* where the accused gave an inculpatory statement within five hours of the start of questioning, even though he was in custody for approximately 28 hours on an unrelated charge. Because there was no prolonged delay in arraignment for the crime at issue, the confession was admissible.

Application of a stringent bright-line rule to the vastly different sets of circumstances that may be involved in arrest, investigation, and arraignment has yielded perplexing results, and the rule has drawn its share of criticism. *See Commonwealth v. Keasley,* 501 Pa. 461, 462 A.2d 216, 217 (1983) (McDermott, J., concurring) ("The *Davenport* rule severely undermines the truth-determining process, and results in the exclusion of constitutionally permissible statements."); *Commonwealth v. Jenkins,* 500 Pa. 144, 454 A.2d 1004, 1008 (1982) (McDermott, J., concurring) ("We must . . . discard *Davenport* and return to a more flexible approach. This will enable our courts to suppress statements where they were obtained through coercion rather than watch the clocks and count the hours."); *Commonwealth v. Bennett,* 498 Pa. 656, 450 A.2d 970, 971 (1982) (Flaherty, J., concurring) (" '[S]topwatch justice' exacts a considerable toll on society when one who is actually guilty of the crimes charged escapes conviction and punishment for his guilty conduct because of what is termed in

lay parlance, a 'technicality' "); *id.*, at 972 (McDermott, J., concurring) ("[T]he iron six-hour rule of *Davenport* has created more mischief than it ever cured . . . in fact, it cannot even cure the mischief to which it was addressed. The *Davenport* rule had shielded the guilty for no reason relevant to the individual circumstances of their cases.").

*People v. Cipriano*, 431 Mich. 315, 429 N.W.2d 781 (1988), involved Michigan's statutory requirement that an accused be brought before a magistrate "without unnecessary delay." *Id.*, at 783 n. 1 (citing M.C.L. §§ 764.13, 764.26; M.S.A. §§ 28.871(1), 28.885). Michigan, the first state to adopt the *McNabb–Mallory* rule, *see People v. Hamilton*, 359 Mich. 410, 102 N.W.2d 738 (1960), had previously applied what was termed a "schizophrenic" version of the rule: "[o]n the one hand, an exclusionary rule based solely on delay is adopted, while on the other exclusion applies only when the defendant proves a causal connection between the delay and the challenged confession." *Cipriano*, at 787 (quoting Keene, *The ill-advised state court revival of the McNabb–Mallory rule*, 72 J.Crim. L. & Criminology 204, 212 (1981)). The *Cipriano* court noted the concerns that caused the *McNabb* Court to adopt the rule in 1943 had been "addressed and remedied for the most part by subsequent changes in constitutional doctrines," *id.*, at 788 (footnote omitted), that prompt arraignment had never been elevated by the U.S. Supreme Court to the level of a constitutional right, *id.*, at 789, and that Michigan's pre-arraignment delay statutes had never provided for automatic exclusion of a confession obtained during delay. *Id.*

Significantly, the Michigan Supreme Court noted the vast majority of state courts[5] interpreting similar statutes, rejected the *McNabb–Mallory* rule:

5. *See, e.g., Smith v. State*, 291 Ala. 507, 282 So.2d 907 (1973); *State v. Arnett*, 119 Ariz. 38, 579 P.2d 542 (1978); *Landrum v. State*, 328 Ark. 361, 944 S.W.2d 101 (1997); *People v. Thompson*, 27 Cal.3d 303, 165 Cal.Rptr. 289, 611 P.2d 883 (1980); *People v. Heintze*, 200 Colo. 248, 614 P.2d 367 (1980); *Headrick v. State*, 366 So.2d 1190 (Fla. Dist. Ct.App. 1 Dist. 1978); *State v. Wyman*, 97 Idaho 486, 547 P.2d 531 (1976), *overruled on other grounds, State v. McCurdy*, 100 Idaho 683, 603 P.2d 1017 (1979); *People v. Johnson*, 44 Ill.2d 463, 256 N.E.2d 343

Under the view adopted in most states, a confession obtained from a suspect in violation of his statutory right to prompt arraignment is not ipso facto inadmissible; rather, arraignment delay is taken into account as one relevant factor in evaluating the overall voluntariness of the confession. See, for example, *State v. Newnam*, 409 N.W.2d 79 (N.D.1987); *Ferry v. State*, 453 N.E.2d 207 (Ind., 1983); *People v. Goree*, 115 Ill.App.3d 157, 70 Ill.Dec. 869, 450 N.E.2d 342 (1983); *People v. Harris*, 28 Cal.3d 935, 171 Cal.Rptr. 679, 623 P.2d 240 (1981); *State v. Wiberg*, 296 N.W.2d 388 (Minn., 1980); *State v. Wyman*, 97 Idaho 486, 547 P.2d 531 (1976), overruled on other grounds *State v. McCurdy*, 100 Idaho 683, 603 P.2d 1017 (1979).

*Cipriano*, at 785 (footnotes omitted).

The Michigan court concluded unnecessary delay in arraignment was only one factor in determining whether a confession was voluntary, and held the test should be "whether the totality of the circumstances surrounding the making of the confession indicates that it was freely and voluntarily made." *Id.*, at 790. Among the other factors to be considered were: the accused's age; his level of education and intelligence; the extent of his previous experience with police; the repeated

(1970); *Krauss v. State*, 229 Ind. 625, 100 N.E.2d 824 (1951); *State v. Hansen*, 225 N.W.2d 343 (Iowa 1975); *State v. Johnson*, 222 Kan. 465, 565 P.2d 993 (1977); *Savage v. Commonwealth*, 939 S.W.2d 325 (Ky. 1996); *State v. Marchetti*, 247 La. 649, 173 So.2d 531 (1965); *State v. Franklin*, 463 A.2d 749 (Me.1983); *Woods v. State*, 315 Md. 591, 556 A.2d 236 (1989); *Commonwealth v. Rosario*, 422 Mass. 48, 661 N.E.2d 71 (1996); *State v. Wiberg*, 296 N.W.2d 388 (Minn.1980); *Scruggs v. State*, 412 So.2d 732 (Miss.1981); *State v. Smith*, 588 S.W.2d 27 (Mo.App.1979); *State v. Benbo*, 174 Mont. 252, 570 P.2d 894 (1977); *Huebner v. State*, 103 Nev. 29, 731 P.2d 1330 (1987); *State v. Lavallee*, 104 N.H. 443, 189 A.2d 475 (1963); *State v. Barry*, 86 N.J. 80, 429 A.2d 581 (1981); *State v. Ortiz*, 77 N.M. 316, 422 P.2d 355 (1967); *People v. Hopkins*, 58 N.Y.2d 1079, 462 N.Y.S.2d 639, 449 N.E.2d 419 (1983); *State v. Richardson*, 295 N.C. 309, 245 S.E.2d 754 (1978); *State v. Newnam*, 409 N.W.2d 79 (N.D.1987); *State v. Cowans*, 10 Ohio St.2d 96, 227 N.E.2d 201 (1967); *State v. Shipley*, 232 Or. 354, 375 P.2d 237 (1962); *State v. Huddleston*, 924 S.W.2d 666 (Tenn.1996); *Cantu v. State*, 842 S.W.2d 667 (Tex.Crim.App.1992); *Horne v. Commonwealth*, 230 Va. 512, 339 S.E.2d 186 (1986); *State v. Moore*, 17 Wash.App. 5, 560 P.2d 712 (1977); *State v. Mason*, 162 W.Va. 297, 249 S.E.2d 793 (1978); *Raigosa v. State*, 562 P.2d 1009 (Wyo.1977).

and prolonged nature of the questioning; the length of detention prior to the confession; whether he was advised of his constitutional rights; whether he was injured, ill, drugged, or intoxicated when he confessed; whether he was deprived of food, sleep, or medical attention; and whether he was physically abused or threatened with abuse. *Id.*

Applying these principles to the three cases before it, the *Cipriano* court concluded the co-defendants' confessions, given 26 hours after arrest, three days after arrest, and two days after arrest, respectively, were not coercively obtained, and thus were admissible. However, the court commented, "we do not condone the failure of the police to comply with the statutes.... However, we hold that an otherwise competent confession should not be excluded solely because of a delay in arraignment." *Id.*, at 790.

Even while professing to follow a rule of automatic exclusion based on the passage of time, our courts have recognized so many exceptions that, as one member of this Court has observed, the rule is "so readily capable of avoidance as to function as no rule at all...." *Bridges*, at 883 (Saylor, J., concurring; joined by Cappy, J.). The factors upon which such exceptions have been based bear close, if not identical, resemblance to those under the "totality of circumstances" approach: the unavailability of a magistrate; the accused's actual knowledge of his rights and the charges; the time spent transporting the accused to the jurisdiction where the warrant was issued; and delay attributable to the accused's mental or physical condition. Thus, Pennsylvania courts have already abandoned an "all or nothing" application of the six-hour rule; if the delay was caused by circumstances beyond police control, and there was no apparent coercion, voluntary confessions have generally not been excluded because of the delay.[6]

---

6. *See, e.g., Commonwealth v. Bracey*, 541 Pa. 322, 662 A.2d 1062 (1995) (period of delay attributable to accused's mental or physical condition is "necessary delay," and must be excluded when determining whether statement was obtained as result of "unnecessary delay"); *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264 (1989) (no *Davenport* violation where defendant gave oral statement within six hours of arrest and subsequent written statement, completed after six-hour period, was

■ The purpose of the six-hour rule is to guard against coercive interrogation and to ensure the accused is promptly afforded his constitutional rights, *see Duncan,* at 1181; if the accused has not been subjected to coercive tactics, the mere passage of six hours in custody prior to questioning does not taint his confession. We agree that "[a]n involuntary confes-

mere recitation of oral statement); *Commonwealth v. D'Amato,* 514 Pa. 471, 526 A.2d 300 (1987) (applying *Travaglia* and concluding transportation time from state where defendant fled, to state where warrant was issued, was excludable from computation of six-hour period); *Commonwealth v. Travaglia,* 502 Pa. 474, 467 A.2d 288 (1983) (no *Davenport* violation where defendants were charged in two counties, and, although arraignment in second county was 7½ hours after arrest, it entailed traveling 40 miles, and second arraignment provided defendants with no more information than first arraignment); *Keasley, supra* (no *Davenport* violation where, although 12 hours between arrest and arraignment, delay was caused by exigent circumstance of unavailability of judge, police made diligent efforts to secure prompt arraignment in face of circumstances, and no interrogation occurred during delay; accused had given statement within one hour of arrest); *Jenkins, supra* (stressing *Davenport* rule was intended to be flexible, no violation where defendant made statement 4½ hours after arrest, was released before six-hour period expired because arraignment within that time was impossible, then subsequently rearrested and arraigned within 2½ hours); *Commonwealth v. Payne,* 760 A.2d 400 (Pa.Super.2000) (no *Davenport* violation where defendant's statement occurred ten minutes after expiration of six-hour period, since defendant first admitted involvement in crime shortly after arrest, and subsequent statement was voluntary clarification of first one), *appeal denied,* 565 Pa. 641, 771 A.2d 1282 (2001); *Commonwealth v. Devine,* 750 A.2d 899 (Pa.Super.2000) (citing *Odrick* and related cases for proposition that, as long as statement was initiated within six-hour period, no *Davenport* violation); *Commonwealth v. Odrick,* 410 Pa.Super. 245, 599 A.2d 974 (1991) (no *Davenport* violation where, although statement did not conclude until 50 minutes after six-hour period, statement began well before six-hour period had elapsed, and delay was not result of police coercion, had no impact on voluntary statement, and was directly attributed to confusion caused by two different crimes occurring at same time in same location); *Commonwealth v. Robertson,* 317 Pa.Super. 158, 463 A.2d 1133 (1983) (no *Davenport* violation where defendant was arrested for murder and robbery, arraigned only on murder before he gave statement, and was not arraigned on robbery until six hours and ten minutes after arrest; purposes of *Davenport* rule, promptly affording protections of Pa.R.Crim.P. 140 and informing accused of rights by neutral judicial authority, were satisfied at initial arraignment on murder charge, and defendant was informed at time of arrest that charges were murder and robbery); *Commonwealth v. Ryles,* 274 Pa.Super. 547, 418 A.2d 542 (1980) (unavailability of judge for arraignment constituted exigent circumstance which excused arraignment six hours and 25 minutes after arrest).

sion can be extorted in five minutes or six hours. Time is important but not of the essence. It must be considered with other factors, but is not by mere passage determinative." *Hughes*, at 1284 (McDermott, J., concurring). Accordingly, we hold voluntary statements by an accused, given more than six hours after arrest when the accused has not been arraigned, are no longer inadmissible *per se*.[7] Rather, in determining the admissibility of all statements, regardless of the time of their making, courts must consider the totality of the circumstances surrounding the confession. The factors noted in *Cipriano* are relevant, as are those which have traditionally been recognized in determining the voluntariness of a confession:

> The test for determining the voluntariness of a confession and the validity of a [*Miranda* ] waiver looks to the totality of the circumstances surrounding the giving of the confession. Some of the factors to be considered include: the duration and means of interrogation; the defendant's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and any other factors which may serve to drain one's powers of resistance to suggestion and coercion.

*Commonwealth v. DeJesus*, 567 Pa. 415, 787 A.2d 394, 403 (2001) (citation omitted), *cert. denied*, 537 U.S. 1028, 123 S.Ct. 580, 154 L.Ed.2d 441 (2002); *see also Commonwealth v. Johnson*, 556 Pa. 216, 727 A.2d 1089 (1999).

---

**7.** *Cf. Commonwealth v. Mason*, 507 Pa. 396, 490 A.2d 421 (1985) (violation of Pa.R.Crim.P.2004 (now Pa.R.Crim.P. 204), which requires search warrants be served by law enforcement officers, does not result in automatic exclusion of evidence seized pursuant to warrant). This Court "reemphasize[d] that exclusion/suppression of evidence is not an appropriate remedy for every violation of the Pennsylvania Rules of Criminal Procedure concerning searches and seizures. It is only where the violation also implicates fundamental, constitutional concerns, is conducted in bad-faith or has substantially prejudiced the defendant that exclusion *may* be an appropriate remedy." *Id.*, at 426 (emphasis in original). Likewise, the right to prompt arraignment in Pennsylvania is afforded by the Rules of Criminal Procedure, and is not constitutionally mandated; therefore, application of a *per se* exclusionary rule to violations of the prompt arraignment rule is an unduly harsh sanction.

■ We recognize the enumerated goals of *Davenport,* including simplification and guidance to court, counsel and law enforcement, elimination of needless pretrial litigation and consequent delay, and lessening the burden on the system without sacrificing the protections afforded the arrested party. Hence, we do not return to the day of near-mandatory litigation based on delay alone, and hold that the time that elapses between arrest and arraignment, by itself, is not grounds for suppression.

That said, delay which directly exacerbates some other coercive police conduct may be relevant, even if less than six hours, for the test remains the totality of circumstances, and the duration of coercive behavior may be relevant to that determination. However, without more, the mere passage of time is not grounds to suppress. If delay exceeds six hours, it is not *per se* grounds to suppress, but is one factor that must be considered in determining whether, in the totality of circumstances, coercion resulted in the challenged evidence. To the extent that prior cases hold to the contrary, they are overruled.

Without a *per se* rule of exclusion based on the mere passage of time, computation of "excludable time" will no longer be necessary. Courts instead will look to the totality of the circumstances, including the cause and effect of any delay beyond six hours. However, courts will not have to determine what time "counts" when computing the six-hour period. This rule will apply to appellant's case and all pending cases where the issue has been properly raised.

■■ Turning to appellant's case, we note our standard of review in evaluating the denial of a suppression motion:

In reviewing a trial court's suppression ruling, our initial task is to determine whether the factual findings are supported by the record. In making this determination, we must consider only the evidence of the prosecution's witnesses, and so much evidence of the defense that remains uncontradicted when fairly read in the context of the record as a whole. When the evidence supports the factual find-

ings, we are bound by such findings; we may reverse only if the legal conclusions drawn therefrom are erroneous.

*Bridges*, at 868 (citation omitted).[8]

At the time of appellant's arrest, he lied to the police about his age and identity. Unaware they did not have correct information and would later have to spend time uncovering appellant's real name, as well as incurring additional processing time because he was a juvenile, the police continued investigating the crime scenes. Detective Fetters was assigned to investigate the deli robbery sometime after 5:00 p.m.; he was the only detective assigned because they "were short-handed as far as manpower went...." N.T. Suppression Hearing, 10/1/97, at 73. At the police station, he interviewed the complainants and viewed the security camera video, then went to the deli around 7:30 p.m., where he met the mobile crimes unit. Detective Fetters had the other officers view the video with him, to show them where he wanted fingerprints and photographs taken. He interviewed other witnesses, and spent about an hour and a half processing the scene.

When Detective Fetters returned to the station around 9:00 p.m., he was notified of the pizzeria robbery and assigned to that case as well. The complainants had already been interviewed, so he went straight to the scene, arriving around 9:30 p.m. The mobile crimes unit being otherwise occupied, another detective helped him process the scene. They took photographs, tried to gather physical evidence including a spent round in the ceiling, and investigated the block where the pizzeria was located, looking for evidence related to a shot fired at officers in pursuit of the robbers. They also interviewed the owner of the pizza shop. About an hour and a half was spent processing the pizza shop; the detectives left there

8. In his Reply Brief, appellant asks this Court to clarify the scope of review in a suppression case; he points to the Commonwealth's citation to the trial record and argues only evidence from the suppression hearing may be considered in evaluating a suppression ruling. *See* Appellant's Reply Brief, at 6–17. As there is ample support in the suppression hearing record for the trial court's factual findings and conclusions of law, we decline the invitation to address whether trial evidence may be considered.

and spent half an hour searching the intersection where the robbers' car had been stopped. They returned to the police station around 11:15 p.m.

Detective Fetters did not begin to question appellant until hours after his arrest, but appellant's argument that there was "no reason to delay [the] interrogation," is not correct. The detective explained at the suppression hearing that because he was the detective assigned to the case, he alone was responsible for interviewing three suspects, including appellant, and no other detective would have done so while he was processing the crime scene, especially when they had their own assignments coming in. *See* N.T. Suppression Hearing, 10/1/97, at 80–81. Half an hour into the interview, the detective realized appellant's deception and had to spend another hour finding out his real name and obtaining his aunt's permission to speak with him. Thus, nearly six and one-half hours passed until appellant was given *Miranda* warnings and made his statement.

Nothing in the record indicates this delay was aimed at overcoming appellant's will, or that he was subjected to coercive tactics. Rather, the detective began interviewing appellant within five hours of arrest, as soon as feasible. Once appellant's real name and age were ascertained, in spite of his efforts to conceal them, he was given *Miranda* warnings; he answered "yes" to each question concerning his understanding of his rights and his waiver of them. Detective Fetters testified although appellant seemed "a bit nervous ... [a] bit apprehensive," when he was given the warnings, he "became a little bit more relaxed and began to talk to me freely," after being told his aunt had given permission for him to be interviewed. N.T. Suppression Hearing, 10/1/97, at 91.

The interview took place in the captain's office, where appellant was informed of the video of the robbery, which was shown to him at his request. Detective Fetters was the only officer who stayed in the room with appellant. There were several breaks taken during the statement. Appellant was permitted to use the bathroom, and was given something to eat. The detective interrupted the interview to fill out a

juvenile flow chart on appellant, as well as to rest his hand from writing; during these breaks he told appellant he could relax. The detective testified that at no time did appellant tell him he wanted to stop the interview, or that he did not understand the conversation. Appellant's physical demeanor never changed. Appellant signed his name at the conclusion of the four-page statement, as well as on each page. The entire process took just under four hours.

Nothing in the duration or means of interrogation, appellant's physical or psychological state, the conditions attendant to detention, the attitude exhibited by the detective during interrogation, or the duration or circumstances of appellant's pre-interrogation detention, indicates appellant's will was overborne or that his statement was the product of coercion. Although appellant was a juvenile, he lied about his age to prevent the discovery of outstanding bench warrants for his arrest. Appellant was aware he was being charged with robbery, and he knew his rights. His agreement to waive those rights and make a statement cannot be said to have been anything other than knowing, intelligent, and voluntary. Accordingly, the Superior Court and the suppression court properly concluded the statement was admissible at trial, and appellant's judgment of sentence is affirmed.

Judgment of sentence affirmed.

Former Chief Justice ZAPPALA did not participate in the decision of this case.

Justice CASTILLE files a concurring opinion.

Justice NIGRO files a concurring and dissenting opinion.

Justice SAYLOR files a concurring and dissenting opinion.

Justice CASTILLE, Concurring.

I join the Majority Opinion. I write separately only to address the retroactive effect of the corrective, supervisory rule recognized today. *See* Majority at 788 ("This rule will apply to appellant's case and all pending cases where the issue has been properly raised.").

The Majority thoroughly and accurately details the checkered history of the *Davenport/Duncan*[1] rule, proving beyond cavil in my view, that the time to disavow that "bright line" or *"per se"* rule is long-past due. As the Majority meticulously details, the "exceptions" to the rule have, in essence, marked a steady return to a "totality of the circumstances" approach. Thus, anything other than fully retroactive application of our formal acknowledgment that the proper approach has evolved into one which looks to the totality of the circumstances would cause unnecessary confusion in the lower courts. It would embroil Pennsylvania trial and appellate courts in additional years of wasteful application of a "rule" so riddled with qualification and exception, and so open to recognition of new qualifications and exceptions, "as to function as no rule at all." Majority Op. at 370–72, 845 A.2d at 785–86 (quoting *Commonwealth v. Bridges*, 563 Pa. 1, 757 A.2d 859, 883 (2000) (Saylor, J., concurring)); *id.* at 10–11 n. 10, 757 A.2d 859 (collecting cases).

In *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002), Mr. Justice (now Chief Justice) Cappy noted the general considerations governing the determination of whether to afford retroactive or prospective effect to a new procedural rule of non-constitutional dimension:

> In *Blackwell [v. Commonwealth, State Ethics Comm.*, 527 Pa. 172, 589 A.2d 1094 (1991)], our court recognized that the decision to apply a new rule of law is within the discretion of the court. 589 A.2d at 1098. Additionally, the Pennsylvania Constitution does not mandate or prohibit the retroactive or prospective application of a new rule of law. *Id.* At common law in Pennsylvania, a decision announcing a new rule of law was normally considered to be retroactive. *Id.* at 1099. In determining whether to apply a new rule retroactively or prospectively, a court should take into account the purpose to be served by the new rule, the extent of reliance on the old rule, and the effect on the administration of justice by the retroactive application of the new rule. *Id.*

**1.** *See Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), and *Commonwealth v. Duncan*, 514 Pa. 395, 525 A.2d 1177 (1987).

813 A.2d at 738 (footnote omitted). In my view, these considerations weigh entirely in favor of full retroactive operation of this non-constitutional rule of procedure.

First of all, the Court today is not, strictly speaking, fashioning a "new" rule of criminal procedure; that momentous event occurred in *Davenport* itself. That decision properly was made prospective because the new six hour rule directly affected daily police investigatory procedures. It would be inappropriate to fault police for relying upon existing law, rather than a time-specific, prophylactic rule that was not in existence at the time of an interrogation and arraignment. The Court's formal abrogation of the *Davenport/Duncan* rule—or, more properly, our belated recognition that the rule has evolved in such a way that it is no longer the bright line rule it once purported to be—does not trigger equivalent concerns of detrimental reliance. As with most rules of procedure, this rule governed the conduct of the government, not that of the suspect; it did not operate to create a new personal "right" of criminal defendants. It is unlikely in the extreme that appellant here temporally confessed when he did in reliance upon the fact that more than six hours had passed since his arrest and, therefore, he could later invoke *Davenport/Duncan* in the hope of suppressing his otherwise-voluntary admissions. Indeed, given how riddled the rule has become with exceptions, no party who would benefit from it could properly be said to have "relied" upon it. *Contrast, Commonwealth v. Freeman*, 573 Pa. 532, 827 A.2d 385, 403 (2003) (holding which abrogated relaxed waiver rule on direct capital appeals given limited prospective effect because litigants may already have relied upon existence of rule in briefing appeals; "Prospective application of our new approach will avoid upsetting the expectations of capital appellants and their direct appeal counsel who have already briefed, or are in the process of briefing, their appeals in reliance upon the prospect that this Court, in its discretion, might reach the merits of some of their otherwise waived claims of trial error)".

In addition, the purpose served by the Majority's reformulation of the rule, and the effect upon the administration of justice, also weigh in favor of full retroactive operation. Today's reformulation merely recognizes just what the rule, in fact, has become. To require application of the old repudiated formulation would, in certain cases, invite further confusion, without any remotely corresponding benefit.

Accordingly, for these reasons, I believe that retroactive application of the corrective, supervisory rule recognized today is appropriate. I join the entirety of the Majority Opinion.

Justice NIGRO, Concurring and Dissenting.

As I cannot agree with the majority that the Court should abandon the six-hour rule established by *Commonwealth v. Duncan*, 514 Pa. 395, 525 A.2d 1177 (1987), and *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977), I must dissent. However, because I ultimately agree that the *Duncan–Davenport* rule was not violated here, I agree with the majority that Appellant is not entitled to relief.

In *Davenport*, this Court held that an arrestee must be arraigned within six hours of arrest in order to "guard against the coercive influence of custodial interrogation [and] to ensure that the rights to which an accused is entitled at preliminary arraignment are afforded without unnecessary delay." 370 A.2d at 305. If an arrestee is not arraigned within six hours of arrest, *Davenport* held, any statement by the accused obtained between arrest and arraignment is not admissible at trial. *Id.* at 306. As the majority notes, *Duncan* then modified the six-hour rule, indicating that the "focus should be upon when the [defendant's] statement was obtained, i.e. within or beyond the six hour period." 525 A.2d at 1181. Finding that the *Duncan–Davenport* rule has essentially become ineffectual, the majority now abandons the rule and instead adopts a "totality of the circumstances" approach to the question of when statements will be deemed admissible. My primary concern with this approach is simply that, in the absence of reasonable and clear time restraints in which police officers are allowed to question suspects, suspects are much

more likely to be exposed to the coercive effect of prolonged police interrogation, which in turn, will yield a greater pool of unreliable confessions. By using time restrictions to curb police officers' potential abuse of the interrogation process, the *Duncan–Davenport* rule, in my view, better safeguards the constitutional rights of defendants than the new "totality of the circumstances" approach adopted by the majority today and thus, should not be abandoned.

Applying the *Duncan–Davenport* rule to the instant case, however, I do agree that Appellant is ultimately not entitled to relief. As this Court stated in *Commonwealth v. Washington,* and as I have reiterated above, the *Duncan–Davenport* rule is premised on a desire to avoid the coercive effect of prolonged police interrogation. 547 Pa. 550, 692 A.2d 1018, 1023 (1998). Consistent with this principle, this Court has found that the *Duncan–Davenport* rule has not been violated when a statement was obtained within six hours of the start of questioning on the offense at issue, even if that statement was obtained after the defendant had been in police custody for more than six hours. *See Washington,* 692 A.2d at 1023 (no violation of *Duncan–Davenport* rule where period of pre-arraignment interrogation did not exceed six hours); *Commonwealth v. Persiano,* 555 Pa. 428, 725 A.2d 151, 153–54 (same). Here, Appellant was arrested at 6:30 p.m., but interrogation did not begin until approximately 11:15 p.m. The interrogation ended at 4:35 a.m., less than six hours after it began, and Appellant gave his statement. Under these facts, I would follow the reasoning of this Court in *Washington* and *Persiano,* and find that the *Duncan–Davenport* rule has not been violated. As such, I am able to concur in the majority opinion's denial of relief to Appellant.

Justice SAYLOR, Concurring and Dissenting.

I concur in the Court's abandonment of the "six-hour rule" governing the admissibility of a pre-arraignment confession as developed in *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977), and *Commonwealth v. Duncan,* 514 Pa. 395, 525 A.2d 1177 (1987), in favor of a totality-of-the-circumstances

approach since, as noted by the majority, the six-hour rule has become so attenuated that it no longer can consistently and effectively serve its intended function. *See Commonwealth v. Bridges,* 563 Pa. 1, 47, 757 A.2d 859, 883 (2000) (Saylor, J., concurring).[1] This is, perhaps unfortunately, more often than not the experience with bright-line, judge-made rules having salutary underlying purposes, but which cause results in their implementation that are later deemed to be unpalatable.

Nevertheless, I disagree with the majority's decision to abandon the six-hour rule retrospectively, as the general practice is to apply new procedural rules of non-constitutional dimension prospectively. *See Commonwealth v. Freeman,* 573 Pa. 532, 562, 827 A.2d 385, 403 (2003) (collecting cases); *accord Davenport,* 471 Pa. at 288, 370 A.2d at 307 (directing prospective application of the six-hour standard).[2] As the *Davenport/Duncan* rule was in effect at the time of Appellant's confession, in light of the traditional non-retroactive approach to modification of non-constitutional rules, and since, as the majority acknowledges, the confession in this case was obtained more than six hours after Appellant's arrest but prior to his arraignment, *see* Majority Opinion, at 374–77, 845 A.2d at 788–89,[3] I believe that Appellant's confession should have been suppressed.

1. Indeed, in this case, the concurring and dissenting opinion authored by Mr. Justice Nigro proposes yet another attenuating alteration to the rule, which would move the starting point for calculation of the six-hour period in single-offense cases from the time of arrest to the time at which interrogation was commenced. *See* Concurring and Dissenting Opinion, at 791–92 (Nigro, J.).

2. The retroactive application of the new rule to the disadvantage of Appellant implicates due process concerns.

3. Like Judge Johnson, I would not incorporate a generalized concept of excludable time into the six-hour inquiry pertaining, for example, to delay occurring by virtue of inaccurate information supplied by the defendant. While the police have an obvious interest in obtaining accurate identification and biographical information from defendants, as Judge Johnson explained in his dissenting opinion in the Superior Court, the police did not need Appellant's name and address in order to take him before a district justice for preliminary arraignment. *See Commonwealth v. Perez,* 760 A.2d 873, 882 (Pa.Super.2000) (Johnson, J., dissenting) (observing, *inter alia,* that police can arraign individuals who exercise their right to remain silent, declining to furnish any information). Nor, for purposes of the six-hour rule, do I view the need

to conduct additional investigation and to process the crime scenes as adequate justifications. *See Davenport*, 471 Pa. at 285, 370 A.2d at 305 (noting that "[a]rresting an individual and holding him over an extended period while continuing an investigation constitutes unnecessary pre-arraignment delay"). Indeed, there is no reason why the police could not have simply questioned Appellant following a preliminary arraignment.

In this regard, I would note that, while the six-hour rule had as a concern the coercive influence of custodial interrogation, it also was designed "to ensure that the rights to which an accused is entitled at preliminary arraignment are afforded without unnecessary delay," *Davenport*, 471 Pa. at 284, 370 A.2d at 305, in particular, advice from a neutral judicial authority of the nature and cause of the accusation, the right to counsel, and the right to reasonable bail. *See* Pa.R.Crim.P. 540.