J-S40008-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FRANK D. KEYSER | |
| Appellant | No. 2420 EDA 2015 |

Appeal from the PCRA Order July 9, 2015
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0005850-2011

BEFORE: BOWES, MUNDY AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                                    **FILED JULY 20, 2016**

Frank Keyser appeals from the July 9, 2015 order denying him PCRA relief. We affirm.

The present case arises from Appellant's convictions of three counts each of burglary, criminal trespass, conspiracy to commit burglary, and one count of theft by unlawful taking. We previously set forth the facts, as found by the trial court:

> At 8:30 a.m. on June 3, 2011, Chief Rockenbach of the Clifton Heights Borough Police Department was off duty outside his residence in the 1000 block of Green Lane in Secane when he heard an alarm ringing in his neighbors' residence at 1006 Green Lane, directly across the street from his residence. 1006 Green Lane is a single family home. He had never heard this alarm before and was not aware his neighbors had an alarm.
>
> Chief Rockenbach observed two men walking from the rear of the 1006 Green Lane residence: an older man with grayish hair

holding a tape measure (later identified as William Profeto) and a younger male (later identified as Keyser). The younger male, Keyser, had dark hair and wore a blue shirt with a number 13 on the back. Chief Rockenbach had never seen either man before and did not believe they had any legal connection to the 1006 Green Lane residence. The chief did not see the neighbors who lived at 1006 Green Lane.

The men walked down the driveway, turned left on Green Lane towards Ashland Avenue, and turned right on Ashland Avenue. Concerned about possible criminal activity, Chief Rockenbach followed the men in his own truck and never lost sight of them. The men entered a blue pickup truck with white doors parked on Ashland Avenue. It seemed very unusual that the men went from a house with the alarm blaring to a side street where a truck was parked. The men drove around neighborhood side streets in a 'convoluted' path with no apparent purpose. Keyser looked back at Chief Rockenbach several times with a 'very nervous' expression as he followed 'right behind them'.

Chief Rockenbach called the police dispatcher on his cellphone to report the events, including a description of the pickup truck and direction of travel. Moments later, Upper Darby Officer Morris, who was in uniform and in a marked car, received a radio dispatch that an off duty police officer was following a vehicle that possibly was involved in a burglary. Shortly after receiving the radio call, Officer Morris saw the pickup truck pass by followed by Chief Rockenbach's truck, and he stopped the pickup truck on Rhodes Avenue in Secane, near Ashland Avenue. Chief Rockenbach exited his truck and explained to Officer Morris that he had been following the truck because he had observed the two men on Green Lane possibly involved in a burglary. After the stop, Officer Morris was asked whether either individual had cuts. Officer Morris observed that Keyser had fresh, bleeding cuts on his right hand, and he conveyed this information over the radio to Upper Darby Officer Sides, whom Officer Morris knew was investigating the scene at Green Lane. Officer Sides told Officer Morris over the radio that there was fresh blood on the driveway at Green Lane. Officer Sides testified that he found several drops of fresh blood in the driveway at 1006 Green Lane and a trail of fresh blood from the middle of the driveway to the front porch. Ten minutes after initiating the stop, and upon

learning about the blood on the driveway, Officer Morris placed Keyser under arrest.

Officer Sides continued his investigation at Green Lane and found that the sliding door in the rear of the house was open. The resident, Mr. Sacka, was not home when the officer arrived, but he returned home shortly thereafter and told the officer that nobody else had permission to be at his house. After inspecting the house, the owner told the officer that nothing was missing.

Chief Rockenbach returned to Green Lane after Officer Morris detained the two men in their pickup truck. The chief observed what appeared to be fresh blood on the part of the driveway of 1006 Green Lane where he had seen Keyser and the other man walking.

For the next 45 minutes, Officer Sides canvassed the neighborhood and learned that the two men had entered two other residences in the same block. Mr. Holland, who resides at 629 Ashland Avenue, a single family home, stated that when he entered his living room, he encountered a white male in his twenties wearing a blue shirt with a number 13 on the back (the same shirt that Chief Rockenbach saw the young male wearing outside of 1006 Green Lane) and a second male in the doorway. The young male asked him if he needed landscaping or yard work. Mr. Holland said no, and the males left. The male had entered his house through an unlocked front door. Ms. Persia, an 11 or 12-year-old female who resides at 1024 Green Lane, another single family home, stated that a white male in his teens or twenties wearing a blue shirt had entered her house through an unlocked front door. Ms. Persia was alone in her bedroom when the male opened her bedroom door and asked if this was a certain address (which it obviously was not). Later that day, Ms. Persia picked Keyser's photograph out of a photo array prepared by Upper Darby police officers.

Additional details connected Keyser to a fourth burglary on the same block. During the traffic stop, Officer Morris observed an old green bike in the back of the pickup truck. After Keyser's arrest, Upper Darby Detective Lanni learned of another burglary at 822 Green Lane in Secane several days earlier on May 28, 2011. In that incident, the homeowner, Mr. Perry, discovered a male at the residence who fled the scene on a green bicycle. Mr.

Perry discovered that $3,000 in cash plus coins and jewelry were missing from his bedroom. Detective Lanni spoke with Officer Morris, who stated that there were two bikes in the back of the pickup truck that he stopped on June 3, one of which was the green one that matched the description provided by Mr. Perry on May 28th. Mr. Perry visited the police station and identified the green bike as the one he witnessed Keyser riding on May 28th. He also selected Keyser's photograph from a photo array prepared by Upper Darby police officers.

*Commonwealth v. Keyser*, 91 A.3d 1295 (Pa.Super. 2013) (unpublished memorandum) (citing Trial Court Opinion, 4/25/13, at 3-7).

On November 19, 2012, the trial court sentenced Appellant to an aggregate term of thirteen to twenty-six years imprisonment, followed by four years of probation. On direct appeal, Appellant raised four issues: lack of probable cause to justify the June 3, 2011 arrest; a challenge to the presentation of a photo array without benefit of counsel; trial court error in refusing to sever the May 28, 2011 burglary from the three June 3, 2011 incidents; and error in admitting preliminary hearing testimony of an unavailable witness. We addressed all issues on the merits and rejected them. Appellant petitioned our Supreme Court for an allowance of appeal, which was denied by Order dated May 17, 2014. No further review was sought.

Appellant thereafter filed a timely *pro se* PCRA petition and counsel was appointed. Collateral counsel filed a ***Turner/Finley***[1] "no merit" letter with an accompanying petition for withdrawal. The trial court issued a notice of intent to dismiss and Appellant filed objections. The trial court issued an order permitting counsel to withdraw and dismissed the petition.

Appellant filed a timely notice of appeal and complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) statement. This matter is now ready for our review. Appellant raises these contentions for our consideration, renumbered for ease of discussion.

> 1. Did the PCRA court err in dismissing the PCRA petition where trial counsel was ineffective for failure to suppress an involuntary confession, of which was given under duress and outside the "six-hour window" of presentment and where Appellant's 5th, 6th, and 14th Amendment rights under the U.S. constitution were violated?
>
> 2. Did the PCRA court err in dismissing the PCRA petition where trial counsel was ineffective for failure to protect Appellant from prejudicial identification procedures when counsel failed to object to, or move to suppress the unduly suggestive photo arrays and suggestive in-court identifications made by numerous Commonwealth witnesses and where Appellant's 6th and 14th Amendment rights under the U.S. Constitution were violated?
>
> 3. Did the PCRA court err in dismissing the PCRA petition where trial counsel was ineffective for failure to object to, and move to impeach the testimony of co-defendant Profeto for

---

[1] ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa.Super. 1988) (*en banc*).

inconsistent statements/testimony where Appellant's 6th and 14th Amendment rights under the U.S. Constitution were violated?

4.    Did the PCRA court err in dismissing the PCRA petition where pre-trial counsel was ineffective for abandoning Appellant during an offer at the preliminary hearing to reduce charges in return for waiver of the hearing where Appellant's 6th and 14th Amendment rights under the U.S. Constitution were violated?

5.    Did the PCRA court err in dismissing the PCRA petition where pre-trial counsel was ineffective for making false disclaimers on a "waiver of arraignment" form where Appellant's 6th and 14th Amendment rights under the U.S. constitution were violated?

6.    Did the PCRA court err in dismissing the PCRA petition without taking into consideration the cumulative nature of counsel's errors and ineffectiveness?

Appellant's brief at 1-3.  At the outset, we note our standard of review:

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).    Herein, each allegation of error challenges trial counsel's effectiveness.    Counsel is presumed effective, and to overcome that presumption the petitioner must show: (1) that the underlying claim has

- 6 -

arguable merit; (2) counsel had no reasonable basis for his action; and (3) that he suffered actual prejudice from counsel's act or failure to act. *Commonwealth v. Ford*, *supra* at 1194 (Pa.Super. 2012); *see also Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001) (adopting standard for reviewing ineffective assistance of counsel as set forth by *Strickland v. Washington*, 466 U.S. 668 (1984)).

Appellant's first two issues challenge trial counsel's choice of suppression theories. The PCRA court[2] grouped these claims together and determined they had been previously litigated:

> [Appellant]'s next ineffectiveness of counsel claims allege that Attorney Stillman failed to protect [Appellant]'s constitutional interests by failing to attempt to suppress a statement given by [Appellant] and a suggestive photo array featuring [Appellant]. Attorney Stillman filed a Pretrial Motion regarding these issues that was litigated at Pretrial Hearing before Judge Jenkins on May 10, 2012 and June 12, 2012. The statement given by the [Appellant] was entered into evidence by the prosecution. The photo array was entered into evidence for the prosecution but not given to the jury.
>
> A defendant is not eligible for post-conviction relief if the allegation of error has been previously litigated. An issue has been previously litigated if the highest appellate court in which the petitioner could have had review...has ruled on the merits of the issue or it has been raised and decided in a proceeding collaterally attacking the conviction or the sentence. 42 Pa.C.S. § 9544 (a)(2)-(3). The Superior Court of Pennsylvania affirmed the trial court's decision in whole. [Appellant] asserts his claim is

---

[2] Our distinguished colleague, the Honorable Patricia H. Jenkins, presided over Appellant's jury trial. The matter was reassigned after Judge Jenkins' appointment to this Court.

> based on "different issues" than those raised by Attorney Stillman but does not give any indication as to what those issues are. Accordingly, these issues have no merit.

Trial Court Opinion, 10/6/15, at 3-4. We disagree that the issue was previously litigated but find no prejudice.

Appellant's *pro se* petition raised these issues and set forth the alternative suppression motion theories. Since no evidentiary hearing was held, we do not address whether counsel's litigation of one theory satisfied the reasonable strategic basis prong. "[A] court will not find counsel to be ineffective if the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interest. If counsel's chosen course had some reasonable basis, the inquiry ends and counsel's assistance is deemed effective." **Commonwealth v. Williams**, 899 A.2d 1060, 1063-64 (Pa. 2006) (citations omitted). Nor do we find a need to remand for an evidentiary hearing as it is clear Appellant cannot establish prejudice.

We begin with the statement given to Detective Brad Ross on the evening of June 3, 2011. Appellant asserts that trial counsel, either in addition to or instead of the grounds chosen, *i.e.*, lack of probable cause to arrest, should have sought suppression on the basis of involuntariness. His argument primarily relies on a case that has been overruled. He argues that "a defendant must be arraigned within 6 hours after an arrest and any statement taken in violation of this rule must be excluded." Appellant's brief at 18 (citing **Commonwealth v. Davenport**, 370 A.2d 301 (Pa. 1977)).

*Davenport* was overruled by *Commonwealth v. Perez*, 845 A.2d 779 (Pa. 2004). "[T]he time that elapses between arrest and arraignment, by itself, is not grounds for suppression." *Id*. at 787. To the extent Appellant's claim is predicated on a *per se* application of the "six-hour" rule, it clearly lacks arguable merit.

However, we discern that Appellant also claims that the confession was involuntary based on the totality of the circumstances. "There is of course no single litmus-paper test for determining a constitutionally impermissible interrogation. . . . [T]he ultimate test of voluntariness is whether the confession is the product of an essentially free and unconstrained choice . . . we must consider the totality of the circumstances, including the accused's mental and physical condition." *Commonwealth v. Johnson*, 107 A.3d 52, 93 (Pa. 2014) (quotation marks and citations omitted). We are guided by the following non-exclusive list of factors in assessing totality of the circumstances:

> the duration and means of interrogation, including whether questioning was repeated, prolonged, or accompanied by physical abuse or threats thereof; the length of the accused's detention prior to the confession; whether the accused was advised of his or her constitutional rights; the attitude exhibited by the police during the interrogation; the accused's physical and psychological state, including whether he or she was injured, ill, drugged, or intoxicated; the conditions attendant to the detention, including whether the accused was deprived of food, drink, sleep, or medical attention; the age, education, and intelligence of the accused; the experience of the accused with law enforcement and the criminal justice system; and any other

factors which might serve to drain one's powers of resistance to suggestion and coercion.

***Commonwealth v. Bryant***, 67 A.3d 716, 724 (Pa. 2013) (citing ***Perez***, ***supra*** at 787).

Appellant presents the following factors to support a finding of involuntariness: length of detention, and an alleged denial of food, water, and medical attention for a bleeding finger. However, Detective Ross offered uncontradicted testimony that Appellant appeared fine and did not have any complaints. Appellant declined the detective's offer of food, medication, or any other accommodation. N.T. Suppression, 5/10/12, at 84. The detective read Appellant a ***Miranda***[3] rights form, which Appellant reviewed and signed. We have reviewed these writings and see nothing in the documents or handwriting to indicate duress. Moreover, we note Appellant listed the name, address, and phone number of his mother, which indicates a lucid mind. He initialed each question and answer as transcribed by the detective, and separately signed the ***Miranda*** form. There is no arguable merit to this alternative theory and Appellant suffered no prejudice by counsel's failure to pursue this tactic.

We next address Appellant's allegations of ineffectiveness pertaining to witness identifications. He asserts that counsel should have sought

---

[3] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

- 10 -

suppression of identifications made pre-trial through the use of a photo array shown to witness Ms. Persia, as well as subsequent in-court identifications. For the reasons that follow, we find Appellant cannot establish prejudice.

We first discuss identifications made from a pre-trial photo array. Appellant's argument in this regard is confusing. He claims the array was unduly suggestive because he was the only white male, he was placed first, in a prominent position, and the array contained Pennsylvania Justice Network identifiers directly above Appellant's photo. In conjunction with this claim, he states he qualified for a hearing, pursuant to *United States v. Wade*, 388 U.S. 218 (1967), to screen for the reliability of the identification procedures, and his pretrial counsel was ineffective for failing to motion the trial court for that hearing. Left unexplained is what this *Wade* hearing would have encompassed.

We find *Wade* inapplicable to these facts. "In [*Wade*], the United States Supreme Court considered the right to counsel in the context of a post-indictment lineup and ultimately concluded that the right of counsel did attach to a post-indictment lineup procedure." *Commonwealth v. Ciccola*, 894 A.2d 744, 748 (Pa.Super. 2006). Appellant concedes trial counsel attempted to suppress the array on the grounds "that the photo arrays were presented to witnesses without the benefit of counsel[.]" Appellant's brief at 11 (emphasis omitted). It is not clear why Appellant invokes a case

- 11 -

involving the right to counsel when that theory was already pursued. Moreover, **Wade** is inapposite for two additional reasons: a police lineup is not the same as a photo array, and, even if it were, the challenged photo array presentation did not occur post-indictment. **Commonwealth v. DeHart**, 516 A.2d 656, 665 (Pa. 1986) ("To extend the Sixth Amendment right to counsel during photographic identification proceedings to any person merely suspected of a crime would be an unreasonable burden on law enforcement officials and on the taxpayer, who in many instances must ultimately underwrite the cost of such representation.").

Additionally, Appellant faults counsel for failing to present argument regarding the physical suggestiveness of the array. Appellant fails to link this argument to **Wade** or any other law. He simply maintains, without further explanation, that "a **Wade** hearing [was needed] to investigate and **challenge the suggestiveness of the photo array** shown to witnesses." Appellant's brief at 14 (emphasis in original). Appellant fails to develop his argument any further, or set forth any argument of suggestiveness with respect to the **presentation** of the array, as opposed to the choice of photographs themselves.

We note that in **Perry v. New Hampshire**, 132 S.Ct. 716 (2012), the Supreme Court discussed the right to challenge photo arrays based on suggestiveness:

> In our system of justice, fair trial for persons charged with criminal offenses is secured by the Sixth Amendment, which guarantees to defendants the right to counsel, compulsory process to obtain defense witnesses, and the opportunity to cross-examine witnesses for the prosecution. Those safeguards apart, admission of evidence in state trials is ordinarily governed by state law, and the reliability of relevant testimony typically falls within the province of the jury to determine. This Court has recognized, in addition, a due process check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime.

*Id*. at 720. Appellant's argument weaves in concepts of the Sixth Amendment right to counsel's presence at an array with Due Process rights to challenge the manner in which an array is presented to witnesses. Appellant fails to elaborate on how the array was suggestive.[4]

_____

[4] We disapprove of Appellant's citation to **United States v. Lawrence**, 349 F.3d 115 (3d Cir. 2003). Appellant quotes the following statement from that case: "if his was the first photo shown, a defendant might argue that showing his/her photo first was unfair." Appellant's brief at 14. Appellant uses this citation to bolster his argument that the array herein, in which his photograph was first, *i.e.*, in the upper left hand corner, was unfairly suggestive. Appellant omits the relevant portion of this quotation:

> To the contrary, it appears to us that showing all of the photographs at once can be a very fair way to proceed depending on all circumstances surrounding the identification. Clearly, if the police had shown each photograph separately, an issue would arise about the defendant's place in the array. If his was the first photo shown, a defendant might argue that showing his/her photo first was unfair.

349 F.3d at 115. The Third Circuit was thus referring to a hypothetical situation in which the accused's photograph is shown "first" in a sequence of individual photographs. In this case, all photographs were displayed
*(Footnote Continued Next Page)*

We have reviewed the array to determine if it was unduly suggestive with respect to the photographs. *See Commonwealth v. Fulmore*, 25 A.3d 340, 347 (Pa.Super. 2011). Photographs are not unduly suggestive if the suspect's picture does not stand out more than those of others and the subjects all exhibit similar facial characteristics. *Commonwealth v. Fisher*, 769 A.2d 1116, 1126-27 (Pa. 2001). We do not find that Appellant's picture stands out more than the others. The background of each photograph is similar, and the men depicted have similar complexions, facial features, facial hair, and hair style. Nor do we find the Pennsylvania Justice Network insignia suggestive in any way. The phrase does not refer to a database of previously-convicted individuals nor does it suggest the pictures are mugshots. The background of the pictures and the clothing of the men do not suggest the pictures were taken as part of any booking process. The symbol next to the phrase shows the familiar keystone, which has no inherent association with any criminal justice agency. Hence, the claim that counsel should have challenged the identifications on these grounds lacks arguable merit and he suffered no prejudice by the failure to raise them.

We now address the related claim that counsel should have sought suppression of the in-court identifications. Since we find there was no taint

*(Footnote Continued)* _____

simultaneously. Thus, it is obvious the case does not help Appellant, even as a persuasive citation.

in the presentation of the array to Ms. Persia, it follows that this claim lacks arguable merit. "Because the out-of-court identifications were not tainted, we need not address appellant's argument that the in-court identifications lacked an independent basis." *Commonwealth v. Johnson*, 668 A.2d 97, 103 (Pa. 1995) (citation omitted). As to Mr. Holland, who was not shown the photo array, we find Appellant cannot establish prejudice. Trial counsel conceded Appellant's presence at Mr. Holland's home, arguing to the jury they should accept that Appellant was innocently soliciting landscaping services.[5] N.T. 10/11/12, at 142; N.T. 10/10/12, at 97.

In his third issue, Appellant argues trial counsel ineffectively failed to impeach William Profeto, Appellant's co-defendant who testified on behalf of the Commonwealth, in exchange for a plea. The Commonwealth asks us to find the claim waived for failure to properly develop the claim on appeal. We agree. Appellant states, "[Profeto]'s testimony was inconsistent with prior statements he made on June 3, 2011 and June 27, 2012 (fifteen days following the pretrial suppression hearing in this case and one year after arrest)." Appellant's brief at 21. He fails to cite to any portion of the record containing these statements, let alone elaborate on how trial counsel was

---

[5] Appellant makes no claim regarding trial counsel's choice of tactic in this regard. We note that Mr. Holland testified that Appellant was banging on the door and spoke to him in the front door area through a screen. N.T. 10/10/12, at 96. Ms. Persia testified Appellant actually entered the home and came upstairs to her bedroom. *Id*. at 156-58.

ineffective. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009).

Even if we were to reach the merits, we would find no prejudice. Appellant argues Profeto's testimony "was inconsistent to that of Commonwealth witnesses Mrs. Persia and Mr. Holland. Profeto offered testimony to the identities and/or descriptions of the witnesses and the conversations held with each, despite those witnesses testifying that he wasn't even present." Appellant's brief at 21. However, the fact that witnesses offer different versions of events simply presents a credibility issue for the jury to resolve. Appellant does not suggest that Profeto's testimony materially differed from his own previous descriptions or statements. Moreover, we note that Mr. Holland identified Appellant as being inside his front door and said there was "someone else outside." N.T. 10/10/12, at 98-99. This testimony is entirely consistent with Profeto's testimony. Ms. Persia did testify to only seeing Appellant, while Profeto stated he saw a girl speak to Appellant. N.T., 10/11/12, at 59. However, defense counsel pointed this out in closing argument. N.T., 10/11/12 at 143. Thus, the jury was well aware of the discrepancy. No relief is due.

Appellant's fourth allegation of error concerns his preliminary hearing. He asserts that his preliminary hearing counsel, Attorney Patrick Lomax,

failed to convey an offer from the Assistant District Attorney that would have reduced three burglary charges, graded as felonies of the first degree, to criminal trespass charges, graded as felonies of the third degree, in exchange for his waiver of the preliminary hearing. Appellant asserts the PCRA court's dismissal of the claim without a hearing was premature.

The trial court found this issue meritless. The opinion pointed to the May 10, 2012 hearing transcript wherein Appellant rejected a plea offer of eight to twenty years incarceration. Trial Court Opinion, 10/6/15, at 3. Appellant correctly points out the trial court did not address his actual claim, which concerned the failure to have charges reduced at the magisterial level. He maintains his ultimate sentence would have changed had the preliminary hearing offer been conveyed, since he would have been convicted of fewer felonies of the first degree.

We find that assuming *arguendo* such an offer was conveyed, Appellant cannot establish prejudice. Appellant's argument relies on **Missouri v. Frye**, 132 S.Ct. 1399 (2012). In **Frye** and its companion case, **Lafler v. Cooper**, 132 S.Ct. 1376 (2012), the United States Supreme Court applied the Sixth Amendment right to effective assistance of counsel to questions arising in the plea-bargaining context. **Frye** established that defense counsel has the duty to communicate a plea offer to a defendant before the offer lapses. **Frye**, **supra** at 1408. The Court then held that, for purposes of **Strickland** prejudice, a litigant needs to demonstrate

- 17 -

a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, **it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable** by reason of a plea to a lesser charge or a sentence of less prison time.

*Id*. at 1409 (emphasis added). Appellant cannot make that showing. As the Commonwealth observes, a magisterial district judge lacks jurisdiction to accept pleas to the felonies and misdemeanors charged in this case. 42 Pa.C.S. § 1515 (listing cases in which district judges have jurisdiction). Accordingly, even if the offer to reduce charges had been made, the matter would still have proceeded to the court of common pleas. "If no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise." *Lafler*, *supra* at 1387.

The inability to establish prejudice in these circumstances is corroborated by *Lafler*'s discussion of remedies. The defendant therein proceeded to trial instead of accepting a plea bargain. In rejecting the offer, the defendant relied on the advice of his counsel, who mistakenly informed him that the prosecution could not establish intent to commit the crimes. All parties agreed counsel was deficient. *Id*. at 1384. The question became what the remedy should be:

The specific injury suffered by defendants who decline a plea offer as a result of ineffective assistance of counsel and then

receive a greater sentence as a result of trial can come in at least one of two forms. In some cases, the sole advantage a defendant would have received under the plea is a lesser sentence. This is typically the case when the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial. In this situation the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea. If the showing is made, the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between.

In some situations it may be that resentencing alone will not be full redress for the constitutional injury. If, for example, an offer was for a guilty plea to a count or counts less serious than the ones for which a defendant was convicted after trial, or if a mandatory sentence confines a judge's sentencing discretion after trial, a resentencing based on the conviction at trial may not suffice. In these circumstances, the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal. Once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed.

*Id*. at 1389 (citation omitted). While **Lafler** recognized the possibility of a guilty plea to counts less serious than the ones for which the defendant was convicted—a situation analogous to the claim herein—the salient point is that these reductions were offered in connection with a **plea***.* Appellant does not request a sentencing remedy; in fact, he continues to maintain his innocence and asks for a new trial. That remedy is unavailable under **Lafler** and **Frye.** Moreover, Appellant's argument assumes that the Commonwealth would not have sought to re-add the charges at a later time

- 19 -

or withdraw and refile. The Rule of Criminal Procedure governing preliminary hearing waiver contemplates this possibility:

> **(A)** The defendant who is represented by counsel may waive the preliminary hearing at the preliminary arraignment or at any time thereafter.
>
> (1) The defendant thereafter is precluded from raising the sufficiency of the Commonwealth's *prima facie* case unless the parties have agreed at the time of the waiver that the defendant later may challenge the sufficiency.
>
> (2) If the defendant waives the preliminary hearing by way of an agreement, made in writing or on the record, **and the agreement is not accomplished**, the defendant may challenge the sufficiency of the Commonwealth's *prima facie* case.

Pa.R.Crim.P. 541 (emphasis added). The wholesale speculation of what might have occurred and the inability to fashion a remedy demonstrates Appellant cannot establish a reasonable probability the end result would have been more favorable. Hence, we find no prejudice.

We now address the fifth averment, which is that pre-trial counsel was ineffective for "making false disclaimers on a 'waiver of arraignment' form." Appellant's brief at 27. The form Appellant refers to was docketed November 10, 2011. This document was signed by Attorney Stillman on October 27, 2011, with a representation by Mr. Stillman that Appellant previously signed other copies of the form.

The trial court dismissed this claim on the basis Appellant failed to present any evidence that Attorney Stillman's representations were fraudulent. We agree, and, in any event, find no prejudice. The purposes of

- 20 -

arraignment are: to ensure the defendant is advised of the charges, have counsel enter an appearance, and commence the period of time within which to initiate discovery and file other motions. Comment to Pa.R.Crim.P. 571. Appellant alleges he was prejudiced by the asserted fraud "in having to prepare for a trial without due process notifications" and further argues he was prejudiced by counsel not requesting a Bill of Particulars or discovery. Appellant's brief at 29. This is effectively a free-standing claim of failing to prepare for trial. There is no indication whatsoever that Attorney Stillman lacked discovery or was unprepared to defend the case. ***See Commonwealth v. Howard***, 732 A.2d 1213, 1215 (Pa.Super. 1999) ("Appellant has not provided any evidence to support his allegation of inadequate preparation. Here, counsel met with Appellant prior to trial, and we will not deem trial counsel ineffective for lack of preparation without sufficient proof.").

Finally, Appellant raises a claim of cumulative ineffectiveness. Our assessment of the cumulative effect of errors depends on the rationale for rejecting the claims. As our Supreme Court has explained:

> We have often held that "no number of failed [ ] claims may collectively warrant relief if they fail to do so individually." However, we have clarified that this principle applies to claims that fail because of lack of merit or arguable merit. When the failure of individual claims is grounded in lack of prejudice, then the cumulative prejudice from those individual claims may properly be assessed.

> We have denied most of Appellant's claims based on lack of merit, and there is no basis for a claim of cumulative error with regard to these claims. With regard to the few claims that we have denied based on lack of prejudice, we are satisfied that there is no cumulative prejudice warranting relief. These claims are independent factually and legally, with no reasonable and logical connection that would have caused the jury to assess them cumulatively.

*Commonwealth v. Spotz*, 18 A.3d 244, 321 (Pa. 2011) (citations omitted).

Applying those principles, we find no cumulative prejudice. We have rejected most of these claims as lacking underlying legal merit. We found no prejudice with respect to the waiver of arraignment, but because Appellant was guilty beyond a reasonable doubt, that alleged error is immaterial with respect to the trial. We, too, are satisfied that there is no cumulative prejudice warranting relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2016

- 22 -