J. S63006/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                             :        PENNSYLVANIA
               v.            :
                             :
JAMEL S. FORD,                :        No. 2332 EDA 2015
                             :
            Appellant      :


Appeal from the PCRA Order, July 20, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at Nos. CP-51-CR-0002100-2008,
CP-51-CR-0005080-2007, CP-51-CR-0005081-2007,
CP-51-CR-0005082-2007


BEFORE: FORD ELLIOTT, P.J.E., SHOGAN AND FITZGERALD,* JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED DECEMBER 06, 2016**

Jamel S. Ford appeals from the order entered in the Court of Common

Pleas of Philadelphia County that dismissed, without a hearing, his first

petition filed pursuant to the Post Conviction Relief Act ("PCRA"),

42 Pa.C.S.A. §§ 9541-9546. We affirm.

In a prior memorandum, affirming appellant's judgment of sentence on

direct appeal, this court summarized the history of this case as follows:

> On December 5, 2006, around 11:10 p.m.,
> while walking at Emerald and Ontario Streets in
> Philadelphia, Jamal Wright and Stephanie Wilcox
> conversed with Haneef Dyches, who was also known
> as "Neef" and "Neef Bucks." [Appellant] approached
> on foot, acknowledged Wright and Dyches, and
> followed Dyches across Ontario Street. As Wright
> and Wilcox followed, [appellant] abruptly pulled a
> gun from his pocket and shot Wright in the head,

---

* Former Justice specially assigned to the Superior Court.

causing Wright to fall to the ground. [Appellant] shot Wilcox in the right side of her face, and then shot Wright again in the chest as Wright lay motionless on the ground. Wilcox ran down the block, hid, and called emergency services. Dyches began to walk away, heard a click, and looked back over his shoulder. [Appellant], with his gun aimed at the back of Dyches' head, told Dyches "Pussy, you ain't seen nothing" and then left the area. Luis Rivera, who was inside his residence on the 2000 block of Emerald Street, heard the three shots, looked out the window, saw [appellant] and Dyches walking in opposite directions, and saw Wright's body lying on the sidewalk.

Police arrived, sought medical treatment for Wilcox, secured the area, and recovered three (3) fired .380 caliber casings from the ground next to Wright's body, which were analyzed by a ballistics expert and were found to exhibit similar firing characteristics. Wright was already dead and police recovered the following items from his body: a semi-automatic Tec-9, 9 millimeter pistol, which was in Wright's waistband; forty dollars ($40.00); a cell phone; and a bag containing ten (10) crack cocaine packets. Ballistics analysis indicated that the Tec-9 was operable, contained no cartridges, and did not fire the .380 caliber casings.

Medical Examiner Bennett Preston, M.D., performed Wright's autopsy, which confirmed that Wright was shot in the right side of his head at close range, *e.g.,* six inches from the gun barrel, that Wright sustained head injuries, *e.g.,* terminal fall injuries, which were likely incurred when he fell after he was shot in the head, that Wright was also shot in the chest from a slightly more distant range, that the cause of Wright's death was multiple gunshot wounds, and that the manner of Wright's death was homicide.

Wilcox was hospitalized for four (4) days for a shattered jaw, eight (8) shattered teeth, and severe lacerations to her face, mouth, and tongue, all of

which required reconstructive surgery. She could not eat or speak normally for nearly eight (8) months due to a metal fixation device on her exterior jaw. Wilcox's jaw cannot be fully reconstructed, eight (8) teeth remain missing, and she still suffers facial numbness and scarring.

An investigation ensued, during which Wilcox and Dyches gave statements and, when shown an array with [appellant]'s photograph, separately identified [appellant], who they know as 'Face,' as the shooter; Wilcox also identified Dyches, by photograph, as the eyewitness. A warrant for [appellant]'s arrest was issued, but [appellant] could not be located and federal authorities were notified that [appellant] was a fugitive.

On February 7, 2007, [appellant] was detained in Atlanta, Georgia as a possible fugitive. Atlanta Homicide Investigator Brett Zimbrick, preliminarily asked [appellant] if he was wanted in Philadelphia and [appellant], who appeared sober, responded affirmatively, admitted that he shot a man in December 2006. [Appellant] received and waived **Miranda**[1] warnings and gave a statement to Investigator Zimbrick, which was videotaped, in which he admitted that he shot Wright and Wilcox, claimed that Wright had robbed him of drugs and money earlier that day, and claimed that, just before he shot Wright, he believed Wright was pulling out a gun. [Appellant] was transported to Philadelphia, arriving on February 20, 2007, and was brought to the Philadelphia Homicide Unit and interviewed by Detective William Sierra. [Appellant] received and waived **Miranda** warnings and gave a second statement, memorialized in writing, therein admitting that he shot Wilcox and Wright on December 5, 2006, claiming that he did so after Wright pulled out a gun, and also claiming that, in the course of that same day, he had a couple of drinks, he was robbed by Wright, he purchased 'wet' or PCP, and he made various cocaine sales.

---

[1] **Miranda v. Arizona**, 384 U.S. 436 (1966).

On April 25, 2007, Dyches testified at [appellant]'s preliminary hearing in this case. On that day and for the next six (6) months, Dyches was in custody for an unrelated case and was housed at the Philadelphia Detention Center ("PDC"), cellblock "G".

On occasion, inmates housed in separate cellblocks at the Detention Center are able to interact with each other in the kitchen, church, medical center, and gym.

On August 3, 2007, as Philadelphia Corrections Officer Chi Haliburton, an officer with fourteen years['] experience, was on duty at the Philadelphia Detention Center and was inspecting incoming mail, her suspicious [sic] were aroused by a letter postmarked "August 2, 2007," which was addressed to Jamal Bowens, an inmate housed in the "D" cellblock, with a return address of 'Rel-Rel, 2528 North 15th Street, Philadelphia, Pennsylvania, 19132[.]" The writer, who identified himself in the letter as "Terrell Bowens, PP Number 968912, 7901 State Road, Philadelphia," requested that Jamal Bowens "take care" of "some bull on your block name Neef Buck…that nigga ratting on my folks…Bang that nigga the fuck out or fuck that nigga up…Make that nigga check on P.C.,[Footnote 4]" and enclosed a copy of Dyches' statement in this matter, which was modified with a superimposed copy of Dyches' police photograph.

> [Footnote 4] "P.C." is a reference to protective custody, a heightened security custody for inmates who are not permitted to mingle with the prison population.

Police investigation revealed that Terrell Bowens resided at 2528 North 15th Street in Philadelphia, had a matching Police Photograph Number/PP Number, was in custody at the Curran Fromhold Correctional Facility ("CFCF"), 7901 State

- 4 -

Road, Philadelphia, and was housed in [appellant]'s cellblock. A search of Terrell Bowens' cell by prison personnel led to the recovery of, *inter alia*, correspondence addressed to "Rel-Rel," while a search of [appellant]'s cell led to the recovery of, *inter alia*, Dyches' photograph.

On August 10, 2007, [appellant] received and waived *Miranda* warnings and gave a third statement, in which he admitted that he had given Dyches' photograph to "people on my block, to know who is snitching" and that he had "a guy…in the Law Library" make the superimposed photocopy of Dyches' photograph and statement.

*Commonwealth v. Ford*, No. 1686 EDA 2009, unpublished memorandum at 2-5, quoting trial court opinion, 9/16/09 at 2-6 (citations and footnote omitted).

The PCRA court set forth the following procedural history:

On February 10, 2009, after a capital jury trial before this Court, [appellant] was convicted of [first-degree murder, possessing an instrument of crime ("PIC"), attempted murder, two counts of aggravated assault, two counts of witness intimidation, solicitation – murder, and conspiracy – murder[2]. On February 17, 2009, after the penalty hearing and an adequate period of deliberation, the jury was discharged as it could not reach a unanimous verdict on the existence of aggravating circumstances, which would have been the basis for a sentence of death. On April 24, 2009, this Court sentenced [appellant] to consecutive terms of incarceration as follows: Life Imprisonment for Murder; two-and one-half to five (2½-5) years for PIC; twenty to forty (20-40) years for Attempted Murder; ten to twenty (10-20) years for one count of Aggravated Assault; ten to twenty years (10-20) on each of the two counts of Intimidation; ten to twenty

---

[2] 18 Pa.C.S.A. §§ 2502, 907, 901, 2702, 4952, 902, and 903, respectively.

- 5 -

(10-20) years for Solicitation; ten to twenty (10-20) years for Conspiracy; and no further penalty for the second Aggravated Assault count, as it merged with Attempted Murder. [Appellant's] May 4, 2009 Post-Sentence Motion was denied on May 14, 2009.

On June 9, 2009, Appellant appealed to the Superior Court of Pennsylvania. On October 26, 2010, the Superior Court affirmed Appellant's judgment of sentence. On May 3, 2011, the Supreme Court of Pennsylvania denied Appellant's Petition for Allowance of Appeal.

On November 1, 2011, Appellant, *pro se*, timely filed the instant PCRA Petition as it was filed well within one year of when his conviction became final. 42 [Pa.C.S.A. § 9545(b)]. On June 23, 2014, court-appointed counsel filed an amended petition on Appellant's behalf. On January 20, 2015, the Commonwealth filed a motion to dismiss Appellant's Amended PCRA Petition. On May 18, 2015, after reviewing Appellant's Amended PCRA Petition and the Commonwealth's Motion to Dismiss, the Court issued a Notice of Intent to Dismiss pursuant to Pa.R.Crim.P. 907 finding that all of the claims raised by Appellant were previously litigated, waived, or without merit. On June 24, 2015, Appellant, *pro se*, filed a supplemental PCRA petition, which the Court did not consider pursuant to judicial policy barring hybrid representation because Appellant is being represented by counsel. On July 20, 2015, the Court formally dismissed Appellant's Amended PCRA Petition.

On July 29, 2015, Appellant timely filed the instant appeal to the Superior Court. On July 29, 2015, the Court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) []. Appellant timely complied and filed his 1925(b) Statement on August 19, 2015. . . .

PCRA court opinion, 10/14/15 at 1-3 (footnotes omitted).

Appellant raises the following issues for our review:

A. Whether The Appellant claims that trial counsel was ineffective for failing to challenge that his statement to the police was involuntary where he was illegally held in custody over six hours in violation of his 14th and 5th amendment rights. All previous counsel were ineffective for failing to raise this issue?

B. Whether The Appellant claims that trial counsel was ineffective for failing to challenge that he was deprived of counsel during critical stages in his case- when he gave a statement, during and after his transport from Atlanta to Philadelphia?

C. Whether The Appellant claims that trial counsel was ineffective in failing to fully investigate his claim of self-defense or imperfect self-defense?

D. [Whether] The Appellant claims that trial counsel was ineffective in failing to retain a mental health expert to determine [appellant's] state of mind at the time the crime was committed?

E. Whether Trial counsel was ineffective for failing to present the testimony of [appellant] who could have presented a defense to the matter?

F. Whether Trial counsel was ineffective in that trial counsel did not properly argue a suppression motion which was based on the illegal search and seizure of a letter that was taken from his prison cell?

G. Whether Trial counsel was ineffective for failing to investigate and challenge the second statement Appellant gave to police, which was the product of extreme duress?

H. Whether Trial and appellate counsel were ineffective for failing to challenge portions of

the closing argument which referred to [appellant] as an "executioner["] and a "cold and calculating person" and commented on the credibility of the witnesses which was so prejudicial as to deprive [appellant] of a fair trial?

I. Whether Trial and appellate counsel were ineffective for failing to request a limiting instruction regarding the references to other crimes evidence that was introduced at trial?

J. Whether rial [sic] and appellate counsel were ineffective for failing to challenge that the 72.5 to 145 year sentence that was imposed consecutively to the life sentence was an abuse of discretion?

Appellant's brief at 6.

We limit our review of a PCRA court's decision to examining whether the record supports the PCRA court's findings of fact and whether its conclusions of law are free from legal error. *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015) (citations omitted). We view the PCRA court's findings and the evidence of record in a light most favorable to the prevailing party. *Id.*

To be entitled to PCRA relief, the defendant bears the burden of establishing, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S.A. § 9543(a)(2), which include ineffectiveness of counsel that "so undermined the truth-determining process that no reliable adjudication of

guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(i) and (ii); *see also Mason*, 130 A.3d at 618 (citations omitted).

Here, appellant's claims assert that his trial and/or direct-appeal counsel provided ineffective assistance.

> Counsel is presumed effective, and in order to overcome that presumption a PCRA petitioner must plead and prove that: (1) the legal claim underlying the ineffectiveness claim has arguable merit; (2) counsel's action or inaction lacked any reasonable basis designed to effectuate petitioner's interest; and (3) counsel's action or inaction resulted in prejudice to petitioner. With regard to reasonable basis, the PCRA court does not question whether there were other more logical courses of action which counsel could have pursued; rather, [the court] must examine whether counsel's decisions had any reasonable basis. Where matters of strategy and tactics are concerned, [a] finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different. Failure to establish any prong of the [] test will defeat an ineffectiveness claim.

*Mason*, 130 A.3d at 618 (internal quotation marks and citations omitted).

Appellant first complains that "trial counsel was ineffective for failing to challenge that his [second] statement to the police was involuntary where he was illegally held in custody over six hours in violation of his 14th and 5th amendment rights." (Appellant's brief at 11.) In support, appellant relies on *Commonwealth v. Davenport*, 370 A.2d 301 (Pa. 1977).

*Davenport*, however, has since been overruled by *Commonwealth v. Perez*, 845 A.2d 779 (Pa. 2004), wherein our supreme court held that "voluntary statements by an accused, given more than six hours after arrest when the accused has not been arraigned, are no longer inadmissible *per se*. Rather, . . . regardless of the time of their making, courts must consider the totality of the circumstances surrounding the confession." *Perez*, 845 A.2d at 787 (footnote omitted); *see also Commonwealth v. Housman*, 986 A.2d 822 (Pa. 2009). In his brief, appellant subsequently concedes that *Davenport* "has been so altered over its history that it is certainly not a bright line rule," but "argues that the time that passed and the conditions under which [appellant] was held deprived him of his basic rights and his statement should have been suppressed." (Appellant's brief at 14.) Therefore, the gravamen of appellant's first complaint is that his second confession was not voluntary due to the conditions of his transport from Atlanta to Philadelphia and the circumstances of that confession.

Contrary to appellant's claim, the record reflects that trial counsel raised the issue of the voluntariness of both of appellant's confessions prior to trial. (Motion to suppress identification, physical evidence, and/or statement, 1/13/09; Docket #4.) Moreover, the claim was raised, addressed, and rejected on direct appeal. There, appellant contended, among other things, that his transfer from Atlanta to Philadelphia "drained him of the ability to withstand suggestion and coercion." *Ford*, No. 1686

EDA 2009 at 9. Based on the record, this court was unable to conclude that the suppression court abused its discretion in finding that driving from Atlanta to Philadelphia and then being interviewed was physically or psychologically detrimental to appellant so as to require suppression of the confession appellant made in Philadelphia. *Id.* at 10. Therefore, not only does the record belie appellant's claim that trial counsel failed to challenge the voluntariness of his second confession, but on direct appeal, this court deemed the claim meritless. Consequently, appellant's claim amounts to nothing more than an attempt to again challenge the voluntariness of his confession and it must fail.

Appellant next complains that "trial counsel was ineffective for failing to challenge that he was deprived of counsel during critical stages in his case- when he gave a statement, during and after his transport from Atlanta to Philadelphia." (Appellant's brief at 15.)

Once again, the record belies appellant's contention. The record reflects that in appellant's suppression motion, trial counsel raised the issue of appellant being "questioned by the police without his consent or without waiving his rights" and also claimed that appellant "was not read his *Miranda* rights prior to the questioning." (Motion to suppress identification, physical evidence, and/or statement, 1/13/09; Docket #4.) The issue was also raised, addressed, and rejected on direct appeal. There, this court noted that the suppression court found the testimony of Detective William

Sierra credible. *Ford*, No. 1686 EDA 2009 at 9. Moreover, this court found that the record demonstrated that Detective Sierra read appellant his *Miranda* rights and then asked and typed appellant's answers to seven questions pertaining to those rights. *Id.* at 10, citing notes of testimony, 1/27/09 at 23. Appellant was then given the typed pages containing his answers to the *Miranda* questions to review. *Id.*, citing notes of testimony, 1/27/09 at 25. Appellant initialed each question, signed each page, and agreed to an interview. *Id.*, citing notes of testimony, 1/27/09 at 25. Therefore, not only does the record belie appellant's contention that trial counsel failed to challenge appellant's claimed deprivation of counsel in violation of his *Miranda* rights, but on direct appeal, this court found no abuse of discretion in the suppression court's denial of appellant's motion to suppress because, among other things, the record supported the conclusion that appellant was properly *Mirandized* before he voluntarily confessed. Therefore, appellant's claim amounts to nothing more than an attempt to once again challenge the admissibility of his confession and it must fail.

Appellant next complains that "trial counsel was ineffective in failing to fully investigate his claim of self-defense or imperfect self-defense." (Appellant's brief at 18.) Appellant's argument on this issue is that:

> [t]rial counsel failed to properly investigate and present evidence that after being robbed by the decedent and his girlfriend, [appellant] did in fact arm himself. Upon returning to gather his personal belonging [sic] scattered on the ground. [sic] [Appellant] observed the decedent and his girlfriend

crossing the street, fearing for his life and being accosted again [appellant] withdrew his weapon and crossed to the opposite side of the street in an effort to avoid any form of confrontation. At which point the decedent and his girlfriend crossed the street again. Not knowing or being able to discern the motive they had, [appellant] panicked and opened fired [sic] upon them. [Appellant] maintains that he believed that he acted with legal justification when he discharged the firearm and counsel was ineffective for failing to explore this defense.

*Id.* at 19-20. Once again, the record belies appellant's claim. The record reflects that trial counsel pursued the theory of self-defense or imperfect self-defense by first introducing the theory in his opening statement, as follows:

> [DEFENSE COUNSEL]: I submit to you that the evidence will show that [appellant] is coming down the street, he believes that Mr. Wright is pulling a weapon on him. He reacts, and fires his weapon. He didn't mean to kill anybody. He thought that his life was in jeopardy. He was protecting himself.

Notes of testimony, 1/28/09 at 92. Trial counsel also cross-examined police investigator Brett Zimbrick regarding a statement appellant made to police that indicated appellant acted in self-defense, with the investigator confirming that appellant stated that appellant believed Wright was about to pull a gun on him. (Notes of testimony, 1/29/09 at 48.) Moreover, appellant's February 20, 2007 confession was read into the record. In that confession, appellant claimed that he shot Wright because Wright pulled a gun out on him. (Notes of testimony, 2/3/09 at 73-75.) Additionally, trial counsel cross-examined the medical expert with respect to appellant's

self-defense theory. (Notes of testimony, 2/2/09 at 66-68.) The record further reflects that the trial court charged the jury on self-defense. (Notes of testimony, 2/6/09 at 92-94.)

Moreover, on direct appeal, appellant contended, among other things, that the evidence was insufficient to sustain his first-degree murder conviction because it established that he acted in self-defense. *Ford*, No. 1686 EDA 2009 at 15 & 18. After reviewing the record, this court concluded that the Commonwealth disproved appellant's claim on self-defense beyond a reasonable doubt. *Id.* at 19. Therefore, this claim must fail.

Appellant next complains that "trial counsel was ineffective in failing to retain a mental health expert to determine [appellant's] state of mind at the time the crime was committed." (Appellant's brief at 21.)

Here, after recitation of rules of law, appellant sets forth the following three-sentence argument to support this contention:

> [Appellant] argues that if the original jury had been presented with evidence of his mental health, drug usage, and diminished intellectual capacity, there is a reasonable probability that the jury would have determined that he lacked the ability to formulate a specific intent to kill. Trial counsel made no effort to investigate the mental state of [appellant]. Given the seriousness of the charges–first degree murder, it fell below the standard of effectiveness not [sic] have the [appellant] evaluated and he should be granted a new trial.

Appellant's brief at 21-22. The record, however, reflects that appellant's defense strategy at trial was self-defense. Trial counsel cannot be found ineffective for failing to present the inconsistent defense of inability to form specific intent. Therefore, this claim must fail.

Appellant next claims that "[t]rial counsel was ineffective for failing to present the testimony of [appellant] who could have presented a defense to the matter." (Appellant's brief at 23.) Once again, the record belies appellant's contention. The record reflects that appellant exercised his constitutional right to remain silent and not present evidence on his behalf, as follows:

> THE COURT: Now, do you understand that you do have a right, under the Constitution of the United States of America, as well as the Constitution of the Commonwealth of Pennsylvania, to present evidence, and to testify on your own behalf?
>
> Do you understand that?
>
> [APPELLANT]: Yes, Sir.
>
> THE COURT: You also have the right not to do that.
>
> Do you understand that, also?
>
> [APPELLANT]: Yes.
>
> THE COURT: I have been informed by your attorney, both of them, that it is your decision that you will not present testimony, and you will not present evidence, and it is your desire at trial to remain silent; is that correct?
>
> [APPELLANT]: Yes, Sir.

. . . .

> THE COURT: Do you thoroughly understand the decision that you are making right now?
>
> [APPELLANT]: Yes.
>
> THE COURT: Is it your desire not to testify on your own behalf?
>
> [APPELLANT]: Yes.
>
> THE COURT: Is it your desire not to present evidence on your behalf?
>
> [APPELLANT]: It is.

Notes of testimony, 2/4/09 at 179 & 181. Therefore, this claim necessarily fails.

Appellant next complains that "[t]rial counsel was ineffective in that trial counsel did not properly argue a suppression motion which was based on the illegal search and seizure of a letter that was taken from [appellant's] prison cell." (Appellant's brief at 25.) On this issue, appellant presents the following four-sentence argument:

> The letter was taken and [appellant] was questioned about it even though [appellant] was represented by counsel at the time there is is [sic] a possibility that due to trial counsel's actions or inactions to prevent this evidence from being admitted, the outcome may have been different. The correctional officer acted as an agent for the Philadelphia Police Department when the evidence was taken from [appellant's] prison cell. Trial counsel was ineffective for failing to protect [appellant's] 4th and 14th Amendment rights when he conceded that the search of the prison cell was legal.

> It violated the prison policy and also violated the laws regarding search and seizure.

Appellant's brief at 25.

The gravamen of appellant's complaint is his dissatisfaction with the trial court's ruling on his suppression motion regarding the constitutionality of the search of his prison cell. This issue was raised, reviewed, and rejected on direct appeal wherein this court found no violation of appellant's constitutional rights. *Ford*, No. 1686 EDA 2009 at 10-12. Therefore, this claim fails.

Appellant next complains that "[t]rial counsel was ineffective for failing to investigate and challenge the second statement [appellant] gave to police, which was the product of extreme duress." (Appellant's brief at 26.) Once again, appellant complains about the conditions of his transport from Atlanta to Philadelphia in an attempt to demonstrate the involuntariness of his second confession. This claim does nothing more than reiterate the arguments advanced in appellant's first issue on appeal, which were unsupported by the record and raised, reviewed, and rejected on direct appeal. Therefore, this claim must fail.

Appellant next complains that "[t]rial and appellate counsel were ineffective for failing to challenge portions of the closing argument which referred to [appellant] as an 'executioner' and a 'cold and calculating person' and commented on the credibility of the witnesses which was so prejudicial as to deprive [appellant] of a fair trial." (Appellant's brief at 27.) Once

again, the record belies appellant's contention. The record reflects that trial counsel placed numerous objections on the record during the Commonwealth's closing argument and that trial counsel also moved for a mistrial. (Notes of testimony, 2/5/09 at 131-222.) Moreover, on direct appeal, appellant challenged the Commonwealth's closing argument, claiming that the prosecutor engaged in repeated and blatant misconduct for alleged instances of discussing facts not in evidence, asking the jury to place themselves in the victim's shoes, introducing facts not pertaining to the case, injecting personal opinions, using a faith-based argument, and revealing that a witness was in protective custody. *Ford*, No. 1686 EDA 2009 at 23-24. On review, this court agreed with the trial court that the statements, considered as a whole, did not prejudice the jury in such a manner that it could not weigh the evidence and render a true verdict. *Id.* at 24. Moreover, this court noted that even assuming that the Commonwealth's closing remarks were sufficiently prejudicial, "[i]n light of the overwhelming evidence of guilt presented against [appellant], we would not reverse and remand the case for a new trial because of those remarks." *Id.* at 24-25. Therefore, this claim fails.

Appellant next complains that "[t]rial and appellate counsel were ineffective for failing to request a limiting instruction regarding the references to other crimes evidence that was introduced at trial." (Appellant's brief at 29.) Appellant then contends that:

> [t]he Commonwealth's witness Detective Zimbrick testified that [appellant] provided a statement in which he alleged he was en route to sale [sic] drugs when the victim was shot. There was a clear insinuation that [appellant] was involved in drug dealing activity and the jury could have inferred that [appellant] was engaged in drug activity.

*Id.*

The gravamen of appellant's complaint again goes to the voluntariness of appellant's confession. As discussed in appellant's first claim of error, this issue was raised, reviewed, and rejected on direct appeal, and appellant's statements were admissible. Therefore, counsel cannot be deemed ineffective for failing to request a limiting instruction for the statements appellant made in his voluntary confession which were subsequently admitted into evidence and used against him. Therefore, this claim fails.

Appellant finally argues that "[t]rial and appellate counsel were ineffective for failing to challenge that the 72.5 to 145-year sentence that was imposed consecutively to the life sentence was an abuse of discretion." (Appellant's brief at 31.) Following a recitation of inapplicable law, appellant sets forth the following three-sentence argument:

> In the instant matter, [appellant] was already sentenced to a sentence of life without parole. The court did not place the appropriate reasons on the record and used [appellant's] prior criminal history which had already been included in his sentencing guidelines to enhance his sentence. The court could have imposed a concurrent period of incarceration which would have been sufficient.

Appellant's brief at 31.

Appellant waives this claim because he fails to cite to any authority that supports his position and he fails to fully develop any meaningful argument concerning this claim. *See Commonwealth v. Rompilla*, 983 A.2d 1207, 1210 (Pa. 2009); *Commonwealth v. Brougher*, 978 A.2d 373 (Pa.Super. 2009) (claim is waived if there is no citation to authority); *Commonwealth v. Spotz*, 716 A.2d 580, 585 n.5 (Pa. 1998) (petitioner waives undeveloped and/or unclear claims). Moreover, the argument that a concurrent and not a consecutive sentence should have been given would not have presented a substantial question on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/6/2016